Gerald GUDENAU d/b/a Gudenau & Company, Gerald Gudenau & Company, Inc., and Fireman's Fund Insurance Co., Appellants,

v.

Hwasong BANG and Jung Nam Bang, Appellees.

No. S–2440.

Supreme Court of Alaska.

Oct. 27, 1989.

Peter W. Giannini, Law Office of Giannini & Associates, Anchorage, for appellants.

Kurt M. LeDoux, LeDoux & LeDoux, Kodiak, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION.

This appeal arises out of a dispute as to whether the terms of a judgment entered on confession had been complied with. The superior court agreed with the Bangs that the terms of the judgment had not been met and awarded them a total judgment in the amount of $20,192.55.

### II. FACTS AND PROCEEDINGS.

On July 10, 1978, Hwasong Bang and Jung Nam Bang contracted with Gerald Gudenau to purchase a house in Kodiak that Gudenau was building.[1] After the Bangs moved in, numerous alleged defects, including standing water under the house, became apparent, causing the Bangs to file suit on July 9, 1979. On February 15, 1982, shortly before trial, the suit was settled by judgment of confession.[2] Paragraphs A.1 and A.2 of the judgment provided that the defendants would install a new drainage system in the Bangs' house, built to the design and specifications of Mr. Francis Richardson. Paragraph A.3 listed five minimum specifications for the new drainage system and authorized Richardson "to establish such additional specifications ... as he may, in his sole discretion, deem necessary." Paragraph A.4 gave Richardson authority to deviate from paragraph A.3's minimum specifications "when, in his opinion, adhering to such specifications would defeat the purposes of curing the currently defective drainage system

---

1. Defendant Gudenau and Company, Inc., is the incorporated form of Gudenau's business. Defendant Fireman's Fund Insurance Company was Gudenau's bonding company.

2. Confession of judgments after an action has been commenced are authorized by Civil Rule 57(b). Although filed in court, such judgments are not approved or supervised by the court.

around the house and eliminating water from standing under the house and eliminating the need for a water pump system." Paragraph A.7 provided for the appointment of a successor to Richardson if he was "unable or unwilling to perform any of the above acts of supervising and inspecting." Paragraph A.8 provided that all costs of the new drainage system were to be paid by the defendants, and paragraph A.9 provided a completion date of "no later than August 1, 1982."

Gudenau then went to work on the Bangs' house. On November 5, 1982, Morris Lee, Kodiak's Building Official, inspected the house. Lee noted in a letter: "Drainage has been corrected by the installation of an automatic sump-pump...." Gudenau's attorney, C. Walter Ebell, then sent the Bangs' attorney, Kurt M. LeDoux, a satisfaction of judgment, but LeDoux refused to sign it because Gudenau had allegedly not complied with Richardson's specifications. In his November 30, 1982, letter to Ebell, LeDoux wrote:

> I spoke with Mr. Richardson on November 23, 1982. He stated that he was ready to do the needed improvements (i.e., tar the foundation, etc.), but that Mr. Gudenau wanted to see whether a "sump pump" and new gutters would work. I do not understand why Mr. Gudenau thought a sump pump system would be acceptable since a sump pump system has *never* been acceptable to my clients. In any event, his new system is not working and water is still pouring through the nail holes in the wood part of the foundation.

(Emphasis in original.) Rather than pursue their remedies provided in the judgment, the Bangs gave Gudenau fifteen days to commence remedial work or to propose an acceptable work schedule. On January 26, 1983, Ebell wrote back to LeDoux:

> According to Mr. Francis "Frenchy" Richardson the new drainage system was installed pursuant to his instructions and in accordance with his specifications. He designed such a system because in his opinion replacing the drain tile would not solve the problem of standing water under the house. As noted in Mr. Lee's

correspondence, the system now in place corrects the drainage and dampness problem and meets the code requirements.

> The agreement was drafted to allow Mr. Richardson to resolve the problem of water under the house in the fashion he considered most appropriate. A third party was selected to perform this function in order to avoid any dispute as to the design of the system or the quality of the system as installed. The work has been performed in accordance with this neutral party's directions. It is unfortunate that the Bangs do not find this design acceptable. However, it should be noted that according to Mr. Lee the problem has been alleviated.

> Mr. Gudenau has spent a considerable amount of money in performing his obligations pursuant to the agreement and in accordance with the directions of Mssrs. Lee and Richardson. The Bangs have received the full benefit of the agreement and the matter should now be closed. Please sign and return the satisfaction of judgment to me.

The satisfaction was not signed, and the dispute apparently lay dormant for the next forty-three months.

On August 31, 1986, the Bangs filed a motion to amend the judgment pursuant to paragraphs F.2 and F.4 of the judgment. The relevant paragraphs of section F of the judgment, titled "Breach of Agreement," state:

> 1. Defendants shall be considered to have breached this agreement if they fail to perform the work as set forth in paragraphs A, B & C. The failure to perform pursuant to paragraph A may only be established in the sole discretion of Francis Richardson, or his successor, who shall state in an affidavit with particularity the facts constituting such breach....

> 2. That if Defendants breach this judgment and Plaintiffs are forced to hire Mr. Francis Richardson or other contractor(s) to complete either the drainage system and/or the residing job, and/or the ventilation system, Plaintiffs shall

file with the Court an Affidavit from the contractor who completes such work setting forth such contrantors [sic] charge for such work. Such sums stated in the Affidavit shall be considered an amendment to this judgment. There shall be 10.5 percent per annum post-judgment interest on said sum until paid; and

3. That Plaintiffs shall have the right to reserve any other remedy in law or equity against Defendants, including but not limited to a separate law suit if such is necessary, including but not limited to a suit seeking specific performance; and

4. That if it is necessary for either party to take steps to enforce this agreement and/or to file legal action, the prevailing party shall be awarded all of their reasonable attorney's fees.

To support their request for $7,865 "for Francis Richardson's contractor[']s fee" and $550 in attorney's fees, plus interest, the Bangs appended to their motion two affidavits. The affidavit of LeDoux supported the attorney's fees request, which was made pursuant to paragraph F.4. Francis Richardson's affidavit was attached to meet the affidavit requirements set forth in paragraphs F.1 and F.2. Paragraphs 3 and 4 of Richardson's affidavit stated:

3. Based upon my inspection and the Judgment on Confession, Defendants have breached the agreement set forth in paragraph A of the Judgment on Confession by not completing the drainage system to my specifications, and the following items still need to be performed in installing a new drainage system around the Bang house: ·

[listing items in subparagraphs a-e.]

4. My charge for installing a new draining system around Plaintiffs' house is $7,865.00.

Gudenau opposed the motion to amend the judgment on two grounds: (1) the motion was barred by laches; and (2) Gudenau had complied with all the provisions of the judgment. In support of his opposition Gudenau filed an affidavit of Attorney Ebell and his own affidavit. In his own affidavit Gudenau stated in relevant part that:

2. I installed the drainage system around Plaintiffs' house pursuant to the specifications of Francis Richardson, and as set forth in the judgment on confession.

3. It is my recollection that Mr. Richardson was on the site during installation and that he inspected it.

4. After conferring with Mr. Richardson, crushed rock was not placed under the house, and a new double drain was not installed since it appeared that such specifications would defeat the purposes of curing the defective drainage system around the house. Mr. Richardson directed that a sump pump be installed under the house in lieu of the above specifications.

5. Sometime in late December, 1982, or early January, 1983, Mr. Richardson advised me that the work performed was acceptable and that it satisfied his specifications for the same.

6. On or about March 11, 1986, I received a copy of a letter from Kurt LeDoux to my attorney, Walt Ebell, regarding the subject drainage system. This was the first time I was advised of any problems with the drainage system since its correction in 1982. Shortly after receipt of that letter, I contacted Mr. Richardson regarding this matter. Mr. Richardson told me that as far as he was concerned, all work had been done and completed and he did not know what the problem was.

Attorney Ebell's affidavit stated:

3. On or about January 6, 1983, I spoke to Francis Richardson regarding this matter. He told me that the sump pump installed by GERALD GUDENAU was an acceptable method of correcting the drainage problem, and that it complied with his specifications for the same. The affidavit of Francis Richardson, dated August 29, 1986, is inconsistent with the representations he made to me and to MR. GUDENAU regarding this matter. Consequently, it will be necessary to take the deposition of Mr. Richardson in order to resolve this matter.

Gudenau also filed a motion pursuant to Civil Rule 6(b) for one month's continuance to allow him to depose Richardson and file a supplemental response to the Bangs' motion.

The superior court held a hearing on the Bangs' motion on October 16, 1986. What the court found in the hearing is not entirely clear. The court made no laches finding. Based on Richardson's affidavit and building inspector Lee's letter, the court appears to have concluded that Gudenau had indeed breached section A of the judgment. The court seems to reject implicitly Gudenau's argument that paragraphs A.3.f. and A.4 gave Richardson authority to alter the specifications in A.3.(a-e) to the extent of permitting Gudenau to install a sump pump. However, the superior court refused to grant the Bangs "a judgment in a fixed amount since it isn't justified." The court stated: "I think the first thing we should do is get the party to make an estimate that can be justified and have that person here so that the parties can examine them." Later in the hearing, the court stated:

> I need somebody who doesn't have an ax to grind that goes out and looks at it and says there is a problem or there isn't a problem and it's going to cost X-number of dollars to correct it; if I were to do the work, this is what would have to be done ... to correct the problem.

Gudenau suggested that the proper person to do this was Richardson and renewed his request to depose him, but the court rejected this suggestion because Richardson was no longer in Alaska [3] and the judgment made provision for a successor. [4]

On November 20, 1986, LeDoux wrote Ebell, proposing three substitutes for Rich-ardson and requesting Ebell to give him names of persons acceptable to Gudenau. Apparently Ebell never responded to Le-Doux's letter, so on December 19, 1986, the Bangs filed a motion requesting the court to issue an order permitting the Bangs to appoint any of the three persons proposed in LeDoux's November letter as a "substitute contractor to complete the drainage system so as to cure its defects assuming that he finds that the specifications set forth in the Judgment on Confession would not have defeated the purpose of curing the defective drainage system, and to amend the Judgment on Confession to provide for payment of the substitute contractor's fees, attorney[']s fees, and interest."

Gudenau opposed the motion, objecting to the contractors proposed by the Bangs on the basis that they were "not impartial," and moved to appoint the Kodiak building inspector "to initially determine whether the sump pump ... was a suitable method of correcting the drainage problems, and, whether the additional specifications outlined in the Judgment of Confession would have effectively remedied the drainage problems where the sump pump did not." Gudenau "further move[d] that the building inspector should confer with Mr. Richardson regarding the specifications, if possible.... [and that] [a]fter the building inspector makes his initial determination, the parties can obtain estimates from other outside contractors, if warranted."

The Bangs replied to Gudenau's opposition arguing that Gudenau had waived any impartiality objections by "their adamant refusal to confer with Plaintiffs and to designate any contractors for Plaintiffs' consideration." The Bangs opposed the appointment of the building inspector because

---

**3.** Richardson had moved to Idaho.

**4.** Paragraph A.7 of the judgment states:
 7. That if Mr. Francis Richardson is unable or unwilling to perform any of the above acts of supervising and inspecting such drainage system, a successor shall be chosen by the mutual agreement of the parties. If a successor cannot be agreed upon, Mr. Morris Lee of Kodiak, Alaska, in his sole discretion, shall appoint a successor. Mr. Morris Lee may appoint himself successor....

Paragraph G of the judgment states:
 In the event any third party mentioned herein is unable or unwilling to perform the acts stated herein, and an alternate third party stated herein is unable or unwilling to perform, or if an alternate party is not appointed, and the parties are unable to agree as to a new supervisor, the parties to this action shall then move the Court to seek the appointment of a Master to select such successor.

he "is a municipal employee who should not be drawn into private disputes where political pressure could be placed upon him."[5]

Thereafter, the superior court issued an order appointing "Mr. Robert Shuttlesworth as substitute contractor to inspect the aforementioned property and prepare an estimate of the cost of correcting the drainage problem of water standing under the house—without resorting to use of a sump pump. Mr. Shuttlesworth shall use his best judgment and may recommend specifications other or greater than the minimum specifications set forth in the Judgment On Confession...."

Shuttlesworth's estimate of $14,941 was filed in superior court. The estimate was in the form of a proposal which could be withdrawn if not accepted within sixty days of its date of issuance, February 19, 1987.

On June 2, 1987, the Bangs filed a motion "to enter an amended judgment in their favor based upon the report of Robert Shuttlesworth." Gudenau opposed the motion on three grounds: 1) no breach of the judgment had been established; 2) the court's February 6 order "goes beyond the parties' agreement as set forth in the Judgment On Confession by eliminating the contractor's authority to deviate from the minimum specifications set forth in Paragraph A.3"; and 3) paragraph F.2 "allows amendment of the Judgment only after the work to complete the drainage system has actually been performed." Gudenau appended to his memorandum in opposition a June 25, 1987, affidavit of Anna M. Moran, which states:

1. I was formerly an associate attorney with the law firm JAMIN, EBELL, BOLGER & GENTRY, of attorneys for Defendants.

2. On January 15, 1987, I spoke to Francis Richardson regarding this case. He advised me that Jerry Gudenau had done everything possible to cure the drainage around Plaintiffs' home and that the addition of crushed rock under the house had not been necessary and that a new double drain and regrading of the property would not solve Plaintiffs' drainage problems. He stated that Gudenau had complied with the specifications as outlined in the Judgment of Confession. He further advised that the sump pump installed by Gudenau was an acceptable method of correcting Plaintiff's drainage problems and that it complied with the specifications for the same, as outlined in the Judgment of Confession.

3. Richardson advised me that he had been seriously ill for the past several months, including August of 1986. He stated he had not read the Affidavit presented to him by Plaintiffs, as he was too ill to do so. Gabrielle LeDoux told him what was in it, and he signed it. He was too ill to understand what was going on at that time.

4. Mr. Richardson is agreeable to having his deposition taken in order to clarify the matter.

The Bangs then filed a reply memorandum and Gudenau filed a motion for a commission to take the deposition of Richardson in Coeur d'Alene, Idaho.

On July 7, 1987, the superior court issued an order containing the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Paragraph F.1 of the Judgment On Confession filed on February 16, 1982 provides in part that defendants shall be considered to have breached the agreement if they fail to perform the work as set forth in paragraph A concerning the installation of a new drainage system.

2. Paragraph F.4 of the Judgment on Confession provided that if any party takes legal action to enforce the agreement, the prevailing party shall be awarded all of their reasonable attorney's fees.

---

5. Both parties seem to have forgotten that they agreed at the October 16 hearing that if they could not agree, the present building inspector would be substituted for Mr. Lee, and that in accordance with paragraph A.7 that person would, in his sole discretion, select Mr. Richardson's successor, and that he could, but need not, select himself.

3. By Order dated February 6, 1987, the court appointed Robert Shuttlesworth as substitute contractor to prepare an estimate of the cost of correcting the drainage problem of water standing under the house.

4. Mr. Shuttlesworth has filed an Estimate dated February 18, 1987, indicating that the cost of correcting the drainage problems, including replacing wet insulation, is $14,941.00.

5. Paragraph F.1 of the Judgment On Confession provides that breach of the agreement by failure to correct the drainage problem shall be established by affidavit of Francis Richardson or his successor.

6. By Affidavit dated August 29, 1986, Francis Richardson stated that defendants have breached the agreement by not completing the drainage system according to his specifications.

### CONCLUSIONS OF LAW

1. Defendants have breached the agreement pursuant to paragraph F.1 of the Judgment on Confession by failing to perform the work set forth in paragraph A and by attempting to correct the drainage problem by use of a sump pump.

2. Plaintiffs are entitled to judgment in the amount of $14,941.00 (FOURTEEN THOUSAND NINE HUNDRED AND FORTY ONE DOLLARS), the cost of correcting the drainage problem, and prejudgment interest at the rate of 10.5 per cent from February 19, 1987.

3. The court grants plaintiffs leave to motion the court for attorney's fees pursuant to paragraph F.4 of the Judgment On Confession and to file a bill of costs pursuant to Civil Rules 54(d) and 79.

### III. DISCUSSION.

 As indicated previously, Section F.1 of the Judgment on Confession provided in part that:

The failure to perform pursuant to paragraph A may only be established in the sole discretion of Francis Richardson, or his successor, who shall state in an affidavit with particularity the facts constituting such breach....

The matter came before the superior court on the Bangs' motion entitled "Motion to Amend Judgment on Confession." They claimed that the motion was being filed pursuant to paragraph F.2 of the judgment. Gudenau argues that this was, in fact, a motion for summary judgment on the issue of breach of the agreement based on Richardson's affidavit.

Neither the Bangs nor Gudenau is correct. The Bangs are wrong because paragraph F.2 does not provide for amending the judgment by motion. Paragraph F.2 provides for the amendment of the judgment merely by filing the required affidavit "from the contractor who completes such work setting forth such contra[ctor's] charge for such work." The agreement does not contemplate any action by the court in amending the judgment.

Gudenau is wrong because the issue whether the agreement had been breached was not to be decided by the court pursuant to the agreement. Rather, pursuant to paragraph F.1, breach of the agreement could be established only by Richardson or his successor. Judgment on Confession [hereinafter JOC] ¶ F.1. Although the court was empowered by the agreement to appoint a master to select a successor for Richardson if the parties could not agree on a successor and if Morris Lee were not available to appoint one, JOC ¶¶ G, A.7, the court was not empowered to appoint itself successor to Richardson and declare that the agreement had been breached.[6]

However, when Gudenau opposed the motion to amend, he was contesting the veracity of Richardson's affidavit, i.e., that Gudenau had breached the terms of the

---

**6.** The Bangs were entitled to have the confession judgment amended to include a money judgment provided that they filed the affidavit required by paragraph F.2. This amendment had been stipulated to by both parties when they signed the confession of judgment in 1982, and did not require any action by the court unless Gudenau did not pay the amount due and the Bangs then wanted to execute on the judgment. Only in this eventuality—in order to obtain the required entry of judgment—could the court's attention be required.

original judgment relating to the installation of a drainage system. By submitting affidavits which tended to impeach Richardson's affidavit Gudenau raised genuine issues of material fact going to the veracity of Richardson's affidavit.[7] Given the state of the record we hold that the matter should be remanded to the superior court for a hearing on the question whether Gudenau breached the provisions of the judgment on confession pertaining to the installation of a drainage system.[8]

### A. Continuance—Cross-Examination.

The foregoing disposition has made it unnecessary to address Gudenau's contention that the superior court erred in refusing to grant a continuance for the purpose of deposing Richardson. Further, our remand has rendered moot Gudenau's point that the superior court erred in its refusal to allow him to cross-examine Richardson.

### B. Laches.

■ In his opposition and at the October 1986 hearing, Gudenau also invoked the defense of laches against the Bangs' motion to amend the judgment. Laches is an equitable defense inapplicable to actions at law. *See Kodiak Elec. Ass'n v. DeLaval Turbine, Inc.*, 694 P.2d 150, 157 (Alaska 1984). We conclude that the instant action is one in law and that therefore Gudenau's defense of laches is inappropriate.[9]

### C. What Should Happen if a Breach by Gudenau is Established on Remand?

Assuming that Gudenau's breach is established upon remand, the agreement contemplates that the Bangs will hire a contractor to complete the drainage system to Richardson's specifications. *See* JOC ¶ F.2. This contractor is, in the first instance, to be Richardson, and Gudenau is to pay the "reasonable costs that ... [he] charges for such work," which, it can be reasonably assumed, would comply with the specifications he had given Gudenau. JOC ¶ A.10. If Richardson is "unable or unwilling" to complete the job, then the Bangs are to seek bids to complete the drainage system work on two "separate licensed and bonded contractors of their sole choice." JOC ¶ A.11. The details of the work that would be bid out are to be determined by Richardson. *See* JOC ¶ A.2. The lower of the two bidders would complete the job, and Gudenau is to pay "whatever cost is charged." JOC ¶ A.12.

In order to pay the contractor who completes the work, the Bangs are to "file with the Court an Affidavit from the contractor who completes such work setting forth such contrantors [sic] charge for such work." JOC ¶ F.2. The amount stated in the affidavit is to "be considered an amendment to [the] judgment." JOC ¶ F.2. Thus, it is contemplated that the filing of the affidavit would give the Bangs a money judgment. This judgment would accrue interest at 10.5% per year until paid. JOC

---

**7.** In addition to his own affidavit Gudenau submitted the affidavit of Anna Moran. Moran's affidavit contained averments which tended to impeach material assertions of fact purportedly made by Richardson in his affidavit. The Bangs' argument that these impeaching affidavits should not be considered because they are hearsay is without merit. These affidavits are admissible for the purpose of impeaching Richardson's affidavit.

In regard to the affidavit of Gudenau's counsel, Ebell, see this court's discussion of Disciplinary Rule 5-102 in *Munn v. Bristol Bay Housing Authority*, 777 P.2d 188, 196–197 (Alaska, 1989).

**8.** We construe Gudenau's opposition to the Bangs' motion as invoking the equitable powers of the superior court to prevent entry of judgment based on a possibly false affidavit.

**9.** An action to enforce a judgment may be legal or equitable in nature, depending on the relief sought. *See* D. Dobbs, *Remedies* § 1.3 at 9–12 (1973); Restatement (Second) of Judgments § 18, comment C at 154–155 (1980) (enforcement action equitable when relief sought is equitable in nature). The relief sought by the Bangs is of a type that is within the powers traditionally possessed by courts of law. Here the Bangs requested the superior court to award them damages based upon events which allegedly constituted a breach of contract under the provision of the confession judgment. Since the Bangs' enforcement action for contract damages is legal in nature, the equitable doctrine of laches is not available to Gudenau.

¶ F.2. The Bangs can execute on this judgment by filing an affidavit stating (1) that Gudenau had defaulted on the judgment, and (2) the sum then in default. JOC ¶ H.2.

The superior court's judgment is REVERSED and the case REMANDED for further proceedings not inconsistent with the foregoing.