STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, ex rel. Linda S. VALDEZ, Appellant,

v.

**Alfonso Rayes VALDEZ, Appellee.**

No. S–6568.

Supreme Court of Alaska.

June 27, 1997.

---

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Alfonso R. Valdez, Renton, pro se.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH, and FABE, JJ.

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

The Child Support Enforcement Division (CSED) appeals from a judgment of the superior court which (1) bars CSED from attempting to collect from Alfonso Valdez child support arrearages which accrued before June 1, 1984; and (2) declares that a California support order entered pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA) supersedes the original order of support contained in the Alaska divorce decree. We conclude that both determinations are erroneous. We vacate the judgment and remand for further proceedings.

### II. FACTS AND PROCEEDINGS

On November 28, 1983 an Alaska superior court entered a decree of divorce terminating the marriage of Alfonso Valdez and Linda Valdez. The decree awarded Linda custody of the parties' minor child, Jaime Lynn Marie Valdez, and ordered Alfonso to pay $400 in child support per month. Alfonso moved to California.

CSED filed a URESA petition in California on Linda's behalf in April 1984. The petition stated that Alfonso was liable to the State of Alaska for "assistance granted." The responding court in California later became aware that Alfonso also owed arrearages under the divorce decree. In response to the petition, the California superior court approved a stipulation in August 1984 which ordered Alfonso to pay $250 per month in ongoing child support and $25 per month toward arrears.[1] Alfonso signed the stipulation, and a Deputy District Attorney of Alameda County, California, signed on Linda's behalf. According to CSED, Alfonso's payments in accordance with that stipulation were sporadic.

In January 1994, Linda filed a motion in Alaska superior court for modification of the original November 1983 support order. The court granted the motion and increased Alfonso's support obligation for Jaime to $528 per month. During these proceedings, the superior court obtained letters that Alfonso had sent to CSED regarding his arrearages. The superior court chose to treat the letters as a Motion to Clarify Amount of Child Support Arrearages, with particular emphasis on whether past accruals amounted to $400 or $250 monthly. The superior court twice invited CSED to formally respond, but CSED did not.

In June 1994, the superior court entered an order which provided in part:

[CSED] is ORDERED that it *may not attempt to collect arrearages older than June 1, 1984;*

[CSED] is ORDERED that the child support amounts assessed against Mr. Valdez shall be $400 through July 31, 1984.

From August 1, 1984 to the present, absent no other court orders in evidence, the amount of child support assessed shall be $250 per month. On August 13, 1984 the Superior Court for the State of California, Alameda County, entered an order pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA) that Mr. Valdez pay the sum of $250 monthly for child support of this child. This court and CSED are bound by the United States Constitution to give *full faith and credit* to the judgments and orders of other states. Therefore, that order shall be obeyed.

(Emphasis added.) CSED and Linda each moved unsuccessfully for reconsideration. This appeal followed.

### III. *DISCUSSION*

CSED challenges the rulings of the trial court which effectively (1) bar CSED from attempting to collect child support arrearages which accrued more than ten years before, and (2) declare that the original Alaska support order was nullified in August 1984 by the URESA order entered in California. We address these issues in reverse order.

A. *The California Support Order Entered Pursuant to URESA Does Not Supersede the Earlier Support Order Contained in the Alaska Divorce Decree.*

The November 1983 Alaska divorce decree required Alfonso to pay $400 in child support per month. In August 1984, the California superior court entered a stipulation pursuant to URESA, requiring Alfonso to pay $250 per month with an additional $25 toward

---

1. The stipulation stated in part:
 THAT the Respondent shall pay to the TREASURER OF ALAMEDA COUNTY ... the sum of TWO HUNDRED FIFTY DOLLARS ($250.00) per month, for the support and maintenance of the above named child, payable on the last day of every month commencing AUGUST 31, 1984, continuing until further order of the Court.
 THAT the [Petitioner] be granted Judgment against the [Respondent] in the amount of THREE THOUSAND ONE HUNDRED TWENTY FIVE DOLLARS ($3,125.00) for arrearages accrued from DECEMBER 1, 1983 to JULY 31, 1984 on the order issued by Superior Court, County of Anchorage, State of Alaska on November 28, 1983 and for welfare assistance provided for [Jaime] from SEPTEMBER 1, 1983 to NOVEMBER 30, 1983.
 THAT the Respondent shall pay to the TREASURER OF ALAMEDA COUNTY ... the sum of TWENTY FIVE DOLLARS ($25.00) per month as reimbursement to the [Petitioner] on said Judgment, said payments to be payable on the last day of every month commencing AUGUST 31, 1984 and continuing until the Judgment is liquidated, and to be made in addition to and with the above current support payments.

arrearages. CSED challenges the superior court's conclusion that Alaska is bound by the United States Constitution to give the latter order full faith and credit, as well as its declaration that after August 1, 1984 the amount of child support assessed was the reduced figure of $250 per month.

CSED contends that according to the express language of URESA, a support order entered by a responding court is not a judgment meant to be afforded full faith and credit by the initiating state. Rather, URESA condones the concurrent existence of more than one binding order of support. Thus, CSED retains the ability to enforce the original obligation.

Alfonso does not address CSED's reading of URESA. Instead, he provides an alternative ground to affirm. He explains that at the time CSED petitioned California for the entry of an order of support under URESA, CSED failed to notify both him and the California court of the existence of the support order contained in the Alaska divorce decree.[2] Alfonso argues that CSED's failure to provide notice of the Alaska divorce decree renders the Alaska order null and void for the duration of the order entered in California.

 Alaska adopted URESA in 1953.[3] Ch. 31, SLA 1953 (codified at AS 25.25.010–.270). The legislation was intended as a means to improve the enforcement of child support obligations when parents cross state lines. In the present case, Alaska served as an "initiating state" in 1984 by forwarding a URESA petition to California, the state to which Alfonso had moved. See AS 25.25.090–.120. Upon receipt of the petition, California, the "responding state," had several options, including establishing a new support order or enforcing an existing support order. See AS 25.25.160–.210; Cal. Fam.Code §§ 4831–4837.

 At issue is the effect which a new support order entered by a responding state court has on a support order previously entered by the initiating state. Whether the California support order modified or superseded the earlier Alaska order is a legal question which requires interpretation of the language of URESA. We review questions of statutory interpretation *de novo. Hertz v. Carothers,* 784 P.2d 659, 660 (Alaska 1990). This case also presents a choice of law question. CSED correctly observes that the law of California governs this dispute. *See* AS 25.25.060 (URESA's choice of law provision providing that "[d]uties of support applicable under this law are those imposed or imposable under the laws of a state where the *obligor* was present during the period for which support is sought"). We conclude that under the law of either California or Alaska, Alfonso is liable for the payment of $400 per month ordered in the 1983 Alaska divorce decree.

We turn first to the plain language of the statute. The version of URESA adopted in Alaska in 1953 contained a provision which explicitly permitted the concurrent existence of more than one binding order of support. This was found in section 30. It remains in force today in substantially the same form:

> An order of support issued by a court of this state, when acting as a responding state, *does not supersede* a previous order of support issued in a divorce or separate maintenance action, but the amounts for a particular period paid under either order shall be credited against amounts accruing or accrued for the same period under both.

AS 25.25.240 (emphasis added); *see also* URESA § 30, 9B U.L.A. 553, 600 (1987).

 When URESA was amended in 1968 by the National Conference of Commissioners on Uniform State Laws, a similar, though more explicit provision replaced section 30, that being section 31 of the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). Although RURESA has not been adopted in Alaska, California enacted it in 1970. 1970 Cal. Stat. 1126. Section 31 as adopted in California reads:

---

**2.** The petition merely stated that Alfonso was liable to the State of Alaska for "assistance granted."

**3.** We note that the Alaska Legislature recently repealed URESA and replaced it with the Uniform Interstate Family Support Act (UIFSA). Ch. 57, SLA 1995 (effective Jan. 1, 1996).

A support order made by a court of this state pursuant to this chapter *does not nullify* and is not nullified by a support order made by a court of this state pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar provision of law, regardless of priority of issuance, *unless otherwise specifically provided by the court.* Amounts paid for a particular period pursuant to a support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under a support order made by the court of this state.

Cal. Fam.Code § 4840 (emphasis added).[4]

A majority of jurisdictions that have considered the meaning of sections 30 of URESA and 31 of RURESA have interpreted the language consistent with the interpretation espoused by CSED, concluding that the respective measures allow the responding state some flexibility in enforcement, but simultaneously protect the integrity of the prior order. A responding court may order the payment of an amount differing from an earlier order entered by the initiating state. However, such an order modifies, nullifies, or supersedes an earlier order *only* when the responding court so specifies. Otherwise, the original order of support remains *fully enforceable. See generally* Andrea G. Nadel, Annotation, *Construction and Effect of Provision of Uniform Reciprocal Enforcement of Support Act That No Support Order Shall Supersede or Nullify Any Other Order,* 31 A.L.R.4th 347, 353 (1984) ("A number of courts have been called upon to enforce a child support order rendered in the original divorce action or other proceeding where a subsequent URESA order has been rendered in another state prospectively reducing the support obligation, and have held that the prior order was fully enforceable by the divorce court notwithstanding the subsequent URESA order, on the basis that the URESA order did not supersede or nullify the previous order.").

A California appellate court faced this question in *In re Marriage of Popenhager,* 99 Cal.App.3d 514, 160 Cal.Rptr. 379 (1979), and reached essentially the same result under both the former anti-supersession and present anti-nullification provisions of URESA. In considering the effect of a RURESA order on a prior order of support contained in a divorce decree, the court stated:

> Supersession occurs only where the issue of modification has been raised and litigated by the parties. Likewise, a reciprocal support order, like the instant one, which differs in face amount from a prior dissolution action support order but does not expressly mention modification, cannot automatically and after-the-fact, modify the dissolution order; the amount on the face of the reciprocal order merely represents the sum currently enforceable.

*Popenhager,* 160 Cal.Rptr. at 383. The court concluded that despite the entry of a RURESA order which required the father to pay $30 monthly, the father had remained continuously obligated to satisfy his earlier obligation of $200 per month, which arose from the support order in the divorce decree. *Id.*

Several other jurisdictions have mirrored *Popenhager*'s approach, and have warned against viewing a responding state's order of support under URESA as a *per se* modification of a prior order. These courts have noted that besides the anti-supersession/anti-nullification provisions of the measure, URESA explicitly states that its enforcement remedies "are in addition to and not in substitution for any other remedies." *See* AS

---

4. This stands in sharp contrast to the new system provided by the Uniform Interstate Family Support Act. In what the National Commissioners called "perhaps the most crucial provision in UIFSA," UIFSA § 205 gives the issuing court exclusive jurisdiction over the support order. UIFSA § 205, Comment. Another state's courts may only modify the support order by consent of the parties, or if the issuing court loses jurisdiction over the order. *Id.* The issuing state only loses jurisdiction if the child support obligor, obligee, and the child no longer reside in that state. *Id.* And of course, if the issuing state does lose jurisdiction, a new state must have personal jurisdiction over both parties before it may modify the support order. *Id.*

Arguably this new system of dealing with interstate child support orders will eventually result in a system in which child support orders, when modified, will represent the sole prospective obligation of the child support obligor.

25.25.020; RURESA § 3, 9B U.L.A. 381, 408 (1987). Courts have strived to maintain the separate, independent character of URESA procedures like those employed in the present case so that (1) the support obligation can be enforced in a new jurisdiction, (2) the responding court may make its own determination about the needs and abilities of the parties, and (3) the prior order may simultaneously remain in effect. *See, e.g., Despain v. Despain,* 78 Idaho 185, 300 P.2d 500, 503 (1956) (by its terms, URESA is "an auxiliary or supplemental remedy for the enforcement of orders of support" and thus "the court originally ordering payment is not affected . . . by an order of the court of the responding state fixing a different sum"); *Burke v. Burke,* 617 N.E.2d 959, 963–64 (Ind.App. 1993) (unless it modifies prior order, responding state's order has "no effect" on original order of support); *Howard v. Howard,* 191 So.2d 528, 531 (Miss.1966) (mother's pursuit of supplemental remedy under URESA "in no way relieved" father from responsibility under prior order).

Several courts in other jurisdictions have concluded that unless the responding state's order specifically modifies a prior support order, it is merely an enforcement tool and *not* a judgment that is entitled to full faith and credit under the federal constitution.[5] *See, e.g., In re Marriage of Wettstein,* 160 Ill.App.3d 554, 113 Ill.Dec. 1, 514 N.E.2d 783, 785–86 (1987) (holding that it would contradict "the express language of the statute" to give full faith and credit to URESA order over original decree); *Banton v. Mathers,* 159 Ind.App. 634, 309 N.E.2d 167, 171–73 (1974) (Full Faith and Credit Clause "has little or no application" when determining arrearages due under prior order); *Elsner v. Elsner,* 425 S.W.2d 254, 256 (Mo.App.1967) (to give full faith and credit to URESA order of sister state would be giving greater effect to statute than is given by courts of sister state itself); *Oglesby v. Oglesby,* 29 Utah 2d 419, 510 P.2d 1106, 1107–08 (1973) (purpose of uniform act is not to "emasculate" lawful support orders, and that it is actually the

original order of support which is entitled to full faith and credit).

■ We are persuaded that the rationale of *Popenhager,* and other jurisdictions which hold similarly, is correct. While this court is not bound by precedent from other jurisdictions, we recognize the need for common construction of uniform acts. *See* AS 25.25.260 (provisions of URESA to be interpreted so as to "effectuate its general purpose to make uniform the law of those states which enact it"); *see also* Cal. Fam.Code § 3 (identifying general purpose of constructing uniform state laws in harmony with other enacting states). We believe that an interpretation that gives deference to the original, unmodified order of support correlates with the intent of URESA—to aid in the *enforcement* of support obligations when parents travel to new jurisdictions. Such an interpretation also recognizes the practicalities associated with interstate support enforcement under URESA. As CSED argues, it would be unfair to give preclusive effect to a new support order entered in a proceeding in which the obligee commonly does not participate. *See Popenhager,* 160 Cal.Rptr. at 384 ("The specificity . . . required for modification . . . recognizes that a reciprocal case is a two-state matter with no appearance by the obligee. Thus, the responding court may frequently lack information as to the obligee's testimony or evidence as to the obligee's ability to pay."). We hold that a support order entered by a responding court pursuant to a URESA petition, which does not specifically modify an order entered in the initiating state, has no effect on the validity of that earlier order and is not entitled to full faith and credit by courts of the initiating state.

■ Turning to the language of the California stipulation, we must consider whether the order actually took precedence over the Alaska decree. The stipulation referred to the Alaska decree, but only insofar as the court entered a consolidated judgment against Alfonso for arrearages due. The

---

5. Article IV, section 1 of the United States Constitution provides: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.

And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

stipulation did not specifically indicate that it modified the prior support order. We conclude that under *Popenhager*, despite Alfonso's acquiescence in the order of support contained in the California stipulation, he remained obligated by the support order contained in the Alaska decree.[6]

We vacate that portion of the superior court's order which declares that Alaska is bound by the support order entered in California pursuant to URESA. We remand for entry of an order which provides that until the support order was modified in April 1994, Alfonso remained subject to a $400 monthly obligation as set forth in the November 1983 Alaska divorce decree.

B. *The Superior Court Erred in Barring CSED from Attempting to Hold Alfonso Valdez Responsible for Child Support Arrearages which Accrued before June 1, 1984.*

■ CSED attempted to collect some of Alfonso's arrearages. In barring CSED from doing so, the court simply stated: "[CSED] is ORDERED that it may not attempt to collect arrearages older than June 1, 1984." No rationale was given to support this aspect of the superior court's order, nor to explain the significance of June 1.

On appeal, CSED assumes that in the June 1994 order the superior court applied *sua sponte* the ten-year statute of limitations pertaining to "an action upon a judgment," former AS 09.10.040. AS 09.10.040, *amended*, ch. 86, §§ 1–2, SLA 1994.[7] CSED argues that the court's application of AS 09.10.040 was overbroad because it implicitly prohibits CSED from collecting, even administratively, a debt older than ten years at the time of the order. CSED also contends that the ten-year statute should have been deemed tolled

due to CSED's pursuit of various collection remedies at the administrative level.

Alfonso does not specifically address the applicability of the ten-year limitations statute, AS 09.10.040. He instead argues that the original support order contained in the Alaska divorce decree is invalid because he was not given an opportunity to submit an affidavit, as required ,by Alaska Civil Rule 90.3(e), which would have stated and verified his adjusted annual income.

We can see no basis for the superior court's order other than the former ten-year statute of limitations applicable to an action upon a judgment. *See* AS 09.10.040. Furthermore, the superior court's ruling was squarely rejected in *State ex rel. Inman v. Dean*, 902 P.2d 1321 (Alaska 1995).

In *Dean* we held that the ten-year statute of limitations governing "an action upon a judgment" by its very nature applies only to an "action," which is commenced by the filing of a complaint. *Id.* at 1323 (citing former AS 09.10.040) (observing that action upon a judgment is commonly employed when judgment creditor attempts to enforce unregistered foreign judgment in sister state); *cf. Young v. Williams*, 583 P.2d 201, 205 (Alaska 1978) (holding that attempt to obtain judgment for past-due support arising from California decree which was not registered in Alaska pursuant to URESA constitutes new action restricted by AS 09.10.040). We also distinguished an action upon a judgment from post-judgment proceedings undertaken to enforce, or execute upon, domestic judgment debt. As to the latter, *Dean* held that no time limitation applies; however, if a judgment creditor attempts to execute after five years, a writ will not issue in the absence of good cause. *Dean*, 902 P.2d

---

6. We reject Alfonso's argument that the Alaska order is unenforceable because CSED's 1984 URESA petition failed to state that Alfonso was liable for support under a decree. No statute requires reference to a decree in order for a URESA petition to be valid. Rather, the complaint need only "set[:] out facts from which it may be determined that the defendant owes a duty of support." AS 25.25.120. Here, CSED's complaint adequately stated that Linda had been in receipt of AFDC and that Alfonso was believed to be the child's father. Additionally, although

neither the complaint nor the certificate referred to the prior decree, it is clear from the stipulation that at least by the time it was signed, the California court and Alfonso had become aware of its existence. Thus, any failure by CSED to comply with proper procedure was cured.

7. The amendment to AS 09.10.040 became effective September 4, 1994. It has no significance here.

at 1323–1325 (citing AS 09.35.020; Alaska R. Civ. P. 69(d)).

The present case involves neither an action upon a judgment nor an attempt to execute. The appeal arises from a parent's motion to clarify the amount of support arrearages owing. Based upon our holding *supra* that the Alaska decree remains enforceable, the execution lapse statute, AS 09.35.020, may at some future date serve to bar CSED from collecting past-due support. However, to inquire now into whether some arrearages are barred would be premature. By the terms of AS 09.35.020 and Alaska Civil Rule 69(d), a judgment creditor need not make a showing of good cause to enforce a domestic decree until it *ultimately chooses* to execute. We hold that none of the arrearages are currently time-barred, and vacate that portion of the court's order barring CSED from attempting to collect arrearages which accrued before June 1, 1984.

▆▆▆ Alfonso's argument that any time limitation issue is moot because the original decree is invalid is without merit. The Alaska divorce decree was entered on November 28, 1983. No timely appeal was filed. *See* Alaska R.App. P. 204(a) (notice of appeal must be filed within thirty days of distribution of judgment). There is no record before this court concerning the proceedings leading to the entry of the Alaska decree, including what type of evidence the trial court possessed regarding Alfonso's level of income. We therefore refuse to consider this argument.[8]

▆▆▆ To the extent that the superior court's decision to bar CSED from attempting to collect arrearages older than June 1, 1984, was based upon former AS 09.10.040, it is incorrect. Under *Dean*, the ten-year statute of limitations does not apply absolutely to the collection of child support, and any current assessment of a time limitation under AS 09.35.020 would be premature.

**C. The Doctrines of Laches, Estoppel, and Waiver.**

▆▆▆ In general, the availability of an equitable defense such as laches depends on the nature of the action in which it is raised. "When a party is seeking to enforce a legal right, as opposed to invoking the discretionary equitable relief of the courts, the applicable statute of limitations should serve as the sole line of demarcation for the assertion of the right," and equitable defenses are not available. *Kodiak Elec. Ass'n v. DeLaval Turbine, Inc.*, 694 P.2d 150, 157 (Alaska 1984) (defense of laches was unavailable in an action at law). Whether an action is legal or equitable depends on the relief sought. *Gudenau v. Bang*, 781 P.2d 1357, 1363 n. 9. (Alaska 1989).

▆▆▆ Alfonso argues that the superior court erred in not considering the defense of laches. Since the CSED seeks a monetary judgment for child support arrearages, a remedy "that is within the powers traditionally possessed by courts of law," *id.*, this dispute is legal rather than equitable in nature. As noted, generally equitable defenses are unavailable in such cases. We have held that the doctrine of laches is not available in spousal support collection actions. *See Lantz v. Lantz*, 845 P.2d 429 (Alaska 1993), *overruled on other grounds by State ex rel. Inman v. Dean*, 902 P.2d 1321 n. 8 (Alaska 1995) ("We now state definitively that laches is no defense to an action to reduce alimony arrearages to judgment."). We are not persuaded now to hold otherwise in the context of child support collection actions.

▆▆▆ In regard to estoppel and waiver,[9] Alfonso argues in part that "CSED made

---

8. Alfonso claims that he moved to California before entry of the divorce decree and that he was not served with a copy of the final order. Even if true, this fact does not excuse Alfonso's failure to timely challenge the validity of the decree. It is clear from the briefing that at some point during the nearly twelve years since the entry of the decree, Alfonso learned of its existence but made no attempt to have it set aside.

9. The elements of equitable estoppel are (1) representation of a position by conduct or word; (2) reasonable reliance thereon by another party; and (3) resulting prejudice. *K.E. v. J.W.*, 899 P.2d 133, 134 (Alaska 1995), *citing Jamison v. Consolidated Utils., Inc.*, 576 P.2d 97, 102 (Alaska 1978).

 Waiver is "generally defined as 'the intentional relinquishment of a known right.'" *Miscovich v. Tryck*, 875 P.2d 1293 (Alaska 1994) (quoting

no attempt to properly inform the California courts that another court order was in effect at that time; and ... CSED and Linda had over six years to correct the URESA and didn't. The URESA requirement of only $250 a month support was accepted all that time." Alfonso's contentions have record support.

The record shows that in its URESA complaint, CSED affirmatively alleged that "Defendant is (not) under a Court Decree to provide support for said minor child[ren]." CSED struck the next clause, "a copy of which [other court decree] is attached hereto as applicable and incorporated herein."[10] CSED only requested $246 per month in its URESA complaint.

In fact, it appears that until 1990, CSED treated Alfonso as owing $250 per month in current obligations. In a CSED "Child Support Account Audit From January 1, 1983 to December 29, 1992," there is a "Scheduled Payment Due" of $250 every month until January 1990, and accrual of arrearages is commensurate with the $250 figure.[11] On February 12, 1990, there is an entry, "Arrears adjusted," adding $13,050 to Alfonso's arrears. Beginning March 1, there are monthly entries of "Scheduled Payment due ... [$]400." It appears that CSED adjusted its accounting, and did so retroactively, after filing a new proceeding with the State of Washington.

In addition to denying explicitly the existence of any pre-existing child support order, requesting only $246 in the California URESA action, and for sixty-six months treating Alfonso's account as accruing only a $250 per month obligation, CSED failed to answer the superior court's Order Regarding Support Arrearages, which unambiguously ordered CSED to respond "regarding calculation of [Alfonso's] child support arrearages, specifically, whether a past child support amount of $250 or $400 monthly was applicable."

The mere existence of a URESA order, and CSED's acquiescence to it, considered alone, do not estop CSED from relying on the original $400 Alaska decree.[12] However, the record shows that CSED affied that Alfonso was not under a court decree for child support, and requested $246 per month in child support. When this disavowal of the Alaska decree is coupled with CSED's sixty-six month treatment of the $250 California support order as Alfonso's entire obligation, and with its failure to comply with the superior court's order to respond, Alfonso has produced an evidentiary basis supporting the contention that CSED waived the right to rely on the original $400 decree in its request for arrearages from the time of the California URESA order, at least until the 1990 action in Washington.[13] If, on remand, the

---

*Milne v. Anderson,* 576 P.2d 109, 112 (Alaska 1978)).

Implied waiver may be accomplished "if the actor's conduct 'evidences an intention to waive a right, or ... [if] neglect to insist upon the right results in prejudice to another party.'" *Id.* (quoting *Milne,* 576 P.2d at 112). To prove implied waiver, "there must be direct, unequivocal conduct indicating a purpose to abandon or waive the legal right, or acts amounting to an estoppel by the party whose conduct is to be construed as a waiver." *Milne,* 576 P.2d at 112. Implied waiver created by neglect to insist upon a right "is, in reality, a type of equitable estoppel." *Wausau Ins. Cos. v. Van Biene,* 847 P.2d 584, 589 (Alaska 1993). It follows that "neglect to insist upon a right only results in an estoppel, or an implied waiver, when the neglect is such that it would convey a message to a reasonable person that the neglectful party would not in the future pursue the legal right in question." *Id.*

**10.** Alfonso raises these points himself: "Does the deletion of any reference to another court order 'is attached here to as applicable and incorporat-

ed herein', and the leaving in of the term '(not)' on the URESA, Page 4, Lines 24 through 25, mean that CSED was not going to let another court order affect the URESA? At least for it's [sic] duration."

**11.** A concurrent URESA order in another state would not change the amount owed to CSED. Rather, it would establish the amount enforceable in that other state. CSED's Account Audit reflects amounts owed of $250 per month.

**12.** *See Hodgins v. Hodgins,* 814 S.W.2d 710 (Mo. App.1991); *Foster v. Marshman,* 96 Nev. 475, 611 P.2d 197 (1980).

**13.** Although not explicitly argued, it can be inferred from Alfonso's arguments that he contends that if he had been apprised by CSED that it insisted upon compliance with the November 28, 1983, superior court's order which fixed Alfonso's obligations at $400 per month, he would have moved to reduce this amount on the basis of his changed financial circumstances.

superior court finds that the arrearages were owed to reimburse CSED for support paid to Linda, it should then determine whether the doctrines of waiver or estoppel should operate to bar CSED's claims for reimbursement in this case.[14]

## IV. CONCLUSION

We VACATE that portion of the superior court's order which declares that the California URESA order deserves full faith and credit over the prior support order contained in the Alaska divorce decree. We also VACATE that portion of the superior court's order which bars CSED from attempting to collect child support which accrued before June 1, 1984. This case is REMANDED for further proceedings not inconsistent with this opinion.

**14.** Where CSED is acting on behalf of the custodial parent to collect child support which is then passed through to that parent, CSED's conduct cannot amount to waiver or estoppel. The right to support is that of the child and thus cannot be waived by CSED. However, where CSED is collecting support as reimbursement to the State for AFDC payments made to the custodial parent, the doctrines of waiver or estoppel may apply.

In this case, the record and briefing are unclear whether the amounts CSED was collecting from Alfonso were being passed through to Linda, were solely reimbursement for public assistance, or were some combination of the two. CSED asked that Alfonso pay $246 per month. If that was the reimbursable amount of AFDC paid to Linda, the difference between that amount and the $400 monthly support ordered by the Alaska court would go to Linda for the child. While Linda at one point apparently had assigned to CSED her right to receive support, any amounts collected by CSED in excess of the AFDC payments would revert to Linda on behalf of the child. AS 25.27.130(c) provides that CSED's "recovery of any amount for which the obligor is liable that exceeds the total assistance granted under AS 47.04 or AS 47.25.310–47.25.420 shall be paid to the obligee."

CSED's briefing suggests that the arrearages would be paid to Linda and the child, rather than being retained by CSED as reimbursement for AFDC payments. At some point, it appears that Linda came off of public assistance. CSED points out in its brief that by the time the superior court was requesting information from it about the correct amount of child support arrearages, "CSED was not a party to the action and no public assistance was involved in the case." It contends that "[b]ecause no public assistance was involved in this case, CSED did not immediately respond to this matter."

If, as CSED's briefing suggests, the arrearages are payable to Linda, then the defenses of waiver and estoppel would not be available to Alfonso. If, on the other hand, some portion of the arrearages constitute reimbursement to the State for AFDC payments made to Linda, then the court should determine on remand whether CSED waived or should be estopped from collecting those amounts.