STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION ex rel. Gail INMAN, Appellant,

v.

Gary Raymond DEAN, Appellee.

STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION, Appellant,

v.

Donald CROSS, Appellee.

Nos. S–6106, S–6116.

Supreme Court of Alaska.

Aug. 25, 1995.

Mary A. Gilson and Diane Wendlandt, Assistant Attorneys General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant Child Support Enforcement Division.

No appearance for Appellee Dean.

Richard P. Newman, Law Office of Richard P. Newman, Anchorage, for Appellee Cross.

Before MOORE, C.J., RABINOWITZ, MATTHEWS, COMPTON, and EASTAUGH, JJ.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

MOORE, Chief Justice.

In separate proceedings, the Child Support Enforcement Division (CSED) moved to reduce to judgment significant child support arrearages owing against two noncustodial fathers, Donald Cross and Gary Dean. The superior court in each case denied CSED the right to recover support installments that accrued more than ten years before the date of the motion. Each court held that former AS 09.10.040,[1] the statute of limitations applicable to "an action upon a judgment," bars the collection of past-due child support when a judicial enforcement action is not commenced within ten years of the missed payment. Because we conclude that the lower courts incorrectly applied AS 09.10.040, we vacate the orders of the superior courts and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

In Cross v. Cross, a superior court issued an order in July 1972 requiring noncustodial parent Donald Cross to pay $231.75 per month to support his three children.[2] Despite the order, the record indicates that Cross never voluntarily met his obligation. After approximately ten years of non-compliance, CSED initiated administrative enforcement measures against Cross. In February 1981, CSED attempted to locate Cross using the Federal Parent Locator Service. In November 1985, CSED notified him that it would be attaching his federal income tax refunds due to his child support delinquency. CSED successfully attached Cross's federal income tax refunds in 1988, 1989, and 1990, recovering $2,662.42 towards unpaid support. By mid-April 1993, Cross's unpaid support arrearages plus interest totalled $26,149.88. On August 16, 1993, CSED moved in court to establish a final judgment for the delinquent support. AS 25.27.226 (to collect past-due child support, CSED or custodian of child may file motion requesting establishment of judgment).

In State, CSED v. Dean, a superior court ordered noncustodial parent Gary Dean to pay $300.00 per month in support for his two children starting in October 1977.[3] Over the next few years, arrearages in unpaid support accumulated to $16,200. In May 1982, CSED filed a complaint in an Alaskan court under the Uniform Reciprocal Enforcement of Support Act (URESA), AS 25.25.010 et seq., seeking to have an Oregon court recognize the support order against Dean. After a reciprocal order was entered in Oregon, from November 1984 until December 1990 Dean made periodic child support payments. Nev-

---

1. The legislature's recent amendment to AS 09.10.040 made stylistic changes to the body of the statute and added a subsection specifically controlling actions to collect child support arrearages. AS 09.10.040, as amended by ch. 86, §§ 1–2, SLA 1994. The amendment became effective September 4, 1994, after these motions were filed. Thus, the changes have no controlling significance here.

2. Cross's support obligation decreased in November 1981 when two of the three children were adopted. The third child was emancipated in June 1984.

3. Dean's obligation was reduced in May 1989 when one child became emancipated. The remaining support obligation continued in force until the other child reached majority in March 1992.

ertheless, as of May 1993, Dean owed $54,-507.24 in unpaid child support and interest. On June 30, 1993, CSED moved to reduce Dean's arrearages to judgment. AS 25.27.226.

In both *Cross* and *Dean,* the obligor parent opposed the State's motion, arguing that the statute of limitations applicable to actions upon a judgment barred CSED's motion to collect that portion of arrearages which accrued more than ten years before. AS 09.10.040. CSED denied in both instances that it had delayed enforcement. According to CSED, its motions to establish a final judgment for support arrearages represented continuations of proceedings timely begun at the administrative level. As such, CSED argued, the limitations statute should be deemed tolled, and none of the support arrearages should be considered time-barred.

· The *Cross* and *Dean* superior courts agreed with the obligor parents and ruled that in these cases, AS 09.10.040 barred the recovery of unpaid child support that accrued before August 16, 1983, and June 30, 1983, respectively. CSED moved unsuccessfully for reconsideration in each case. The cases were consolidated for purposes of appeal. Alaska R.App.P. 204(g).

## II. *DISCUSSION*

█ This appeal concerns the enforcement of two child support orders, entered by Alaska courts, requiring noncustodial parents to make regular support payments for the benefit of their minor children. As in the majority of jurisdictions, Alaska considers periodic child support obligations "judgments" that vest when an installment becomes due but remains unpaid. AS 25.27.225; *Young v. Williams,* 583 P.2d 201, 205 & n. 11 (Alaska 1978); *see also Britton v. Britton,* 100 N.M. 424, 671 P.2d 1135, 1138–39 (1983). Each

4. Original orders of support are also considered "judgments," which under certain conditions, are prospectively modifiable. Alaska R.Civ.P. 90.3(h)(1) (permitting modification of a final child support award if allowed by federal law or upon material change of circumstances).

5. For example, the common law required the institution of a new action before a foreign judgment could be enforced by a sister state. 30 Am.Jur.2d *Executions and Enforcement of Judg-*

unpaid child support obligation is considered a "judgment" because, like court-rendered judgments, child support arrearages are not subject to retroactive modification.[4] *See, e.g., Carter v. Carter,* 611 A.2d 86, 87 (Me. 1992) ("[T]he right to the payment of support becomes vested as it becomes due. Thus an order of child support is essentially a 'judgment in installments'. . . ."); *Britton,* 671 P.2d at 1138–39 ("[E]ach monthly child support installment mandated in the final decree was a final judgment, not subject to retroactive modification."); Alaska R.Civ.P. 90.3(h)(2).

In finding the oldest portion of delinquent support payments time-barred, the *Cross* and *Dean* superior courts applied the statute of limitations applicable to an "action upon a judgment." AS 09.10.040. In 1993, when these motions were filed, AS 09.10.040 provided as follows:

**Action upon judgment or sealed instrument in 10 years.** *No person may bring an action upon a judgment* or decree of a court of the United States, or of a state or territory within the United States, and no action may be brought upon a sealed instrument *unless commenced within ten years.*

(Emphasis added.) Both courts concluded that because a portion of the missed support payments accrued more than ten years before the instant court proceedings, any missed support obligations that vested earlier than ten years before the State's current "actions" were barred from collection.

█ We conclude that by applying former AS 09.10.040 in this context, each court erred. Alaska Statute 09.10.040 applies when litigants "bring an action" and thus governs only proceedings commenced by the filing of a complaint.[5] In each of the present

*ments* § 775 (1994); *see, e.g., Young,* 583 P.2d at 205 (holding that the ten-year limitations statute restricts an action to obtain a judgment for past-due child support arising from an unregistered California decree); *Hamilton v. Seattle Marine & Fishing Supply Co.,* 562 P.2d 333, 337 n. 16 (Alaska 1977) (applying the ten-year limitations statute to a creditor's action to establish a judgment on the basis of one rendered by a Washington court).

cases, when CSED moved to establish a judgment for support arrearages pursuant to AS 25.27.226, the agency did not initiate a new "action" to establish the non-custodial parent's liability. Rather, CSED sought to *collect* a valid, unsatisfied domestic judgment, which it already possessed, for a specified sum of money. In this sense, although termed a "motion requesting establishment of a judgment" under AS 25.27.226, each proceeding was in aid of enforcement of a judgment which was already in existence.

■ It is well-settled that executing upon a judgment does not operate to commence an entirely new civil action.[6] Our statutes provide a separate standard for executions, imposing no definitive time limitation upon their commencement. AS 09.35.020. If a judgment creditor seeks to execute upon a valid judgment after a lapse of five years, however, good cause must be demonstrated for the delay:

**Issuance of execution after five years.** When a period of five years has elapsed

---

Most jurisdictions now allow the registration of foreign judgments, which enables them to be enforced without commencing another action. *See, e.g.,* Uniform Enforcement of Foreign Judgments Act, AS 09.30.200–.270; Uniform Reciprocal Enforcement of Support Act (URESA), AS 25.25.254–.258.

6. "It has been said that a motion to enforce a judgment at law is neither an action nor a special proceeding of a civil nature, but is merely a subsequent step in an action or special proceeding already commenced, which, with regard to the time within which the motion may be taken, is governed entirely by the provisions of the statute specially relating thereto." 30 Am.Jur.2d *Executions and Enforcement of Judgments* § 6 (1994).

7. Civil Rule 69(d) provides in part:

**Execution After Five Years.** Whenever a period of five years shall elapse without an execution being issued on a judgment, no execution shall issue except on order of the court in the following manner:
(1) The judgment creditor shall file a motion supported by affidavit with the court where the judgment is entered for leave to issue an execution. The motion and affidavit shall state the names of the parties to the judgment, the date of its entry, *the reasons for failure to obtain a writ for a period of five years* and the amount claimed to be due thereon. . . .
(Emphasis added.)

---

after the entry of judgment and without an execution being issued on the judgment, no execution may issue except by order of the court in which judgment is entered. The court shall grant the motion if the court determines that there are *just and sufficient reasons* for the failure to obtain the writ of execution within five years after the entry of judgment.

AS 09.35.020 (emphasis added); *see also* Alaska R.Civ.P. 69(d).[7] Because the procedures employed by CSED in *Dean* and *Cross* were preparatory to the issuance of executions, the trial courts should have entered consolidated judgments and then utilized the time limitation set forth in AS 09.35.020 and Civil Rule 69(d), which directly govern execution proceedings.[8]

This holding, which differentiates between an action upon a judgment and an execution, is in step with early decisions of the Oregon Supreme Court construing the predecessors of our modern statutes.[9] By the mid-nine-

---

8. In *Cedergreen v. Cedergreen,* 811 P.2d 784 (Alaska 1991), we stated in dictum that AS 09.10.040 applies to motions to enforce a decree. *Id.* at 786–87 & n. 3. Because we did not consider in that case whether any statute of limitations was applicable to such an enforcement proceeding, we disapprove of the dictum stated therein.

In *Lantz v. Lantz,* 845 P.2d 429 (Alaska 1993), we held that AS 09.10.040 limits the time available for a spouse seeking past-due alimony that arose in regular installments from a domestic decree to bring a motion to reduce arrearages to judgment. *Id.* at 431. We see no reason to treat the collection of past-due alimony payments, ordered by decree, differently than an execution proceeding to collect past-due child support. To the extent that *Lantz* is inconsistent with our holding today, it is overruled.

9. When Congress passed the Alaska Government Act of 1884, the general statutes of Oregon were employed as the founding basis for Alaska law. Act of May 17, 1884, ch. 53, 23 Stat. 24 (1884); *see generally* Frederic E. Brown, *The Sources of the Alaska and Oregon Codes,* 2 UCLA–Alaska L.Rev. 15 (1973).

Although our decision in the present case does not require resort to Oregon case law, we continue to adhere to the rule of statutory construction that a statute adopted from another state, having previously been construed by that state's highest court, is presumed to have been adopted with that construction placed upon it. *City of Fairbanks v. Schaible,* 375 P.2d 201, 207 (Alaska

teenth century, the Oregon Code of Civil Procedure contained a statute of limitations that, like former AS 09.10.040, provided that the following actions would be barred unless commenced within ten years:

1. An action upon a judgment or decree of any court of the United States, or of any state or territory within the United States;

2. An action upon a sealed instrument.

Or.Code Civ.P. § 5 (1862). The Oregon Civil Code provided, like AS 09.35.020, that after five years from the entry of judgment, execution could not issue except upon leave from court. Gen.Stat.Or. § 292 (1862).

In at least two early decisions construing these statutes, the Oregon Supreme Court made clear that the statute of limitations restricting actions upon a judgment did not apply to executions upon domestic judgments. *Murch v. Moore*, 2 Or. 189, 190 (Or.1866), held that the life of an Oregon judgment is not limited by the statute of limitations found in section 5. *Id.* at 190. Rather, under the execution statutes, "it is in the power of the judgment creditor to keep his judgment alive until it is discharged by payment, be that period long or short." *Id.* at 191. Later, in *Strong v. Barnhart*, 5 Or. 496 (Or.1875), the court reiterated that the means for enforcing a domestic judgment is by execution, not by bringing a new action:

> The means provided by the statute for enforcing a judgment is by execution, which may be issued at any time within five years of the rendition of the judgment, after which time it can only be enforced by obtaining leave to issue an execution....
>
> ....
>
> If it were true that § 5 of the statute of limitations, in the absence of any other statute on the subject, would embrace domestic judgments, still, when there is a subsequent statute providing that execution may issue at any time after five years, upon leave being obtained, without any limitation as to time, we cannot see how the general statute on that subject should control.

*Id.* at 500. We see no reason to vary from this interpretation.

Therefore, the standard provided by AS 09.35.020 and Civil Rule 69(d) will govern on remand. In order to collect unpaid obligations that vested more than five years before the current proceedings, execution will not issue unless CSED can show to the court's satisfaction "just and sufficient reasons for the failure to obtain the writ of execution." AS 09.35.020.

CSED may be able to demonstrate any number of valid reasons supporting its decision to delay formal execution. Foremost among the reasons supporting a "good cause" determination in *Cross* and *Dean* appear to be the State's previous administrative efforts to collect delinquent support payments. CSED attached Cross's federal income tax refunds in 1988, 1989, and 1990, and CSED brought a URESA proceeding to have the support order against Dean registered in his new home state. As CSED notes in its brief, the legislature expressly granted CSED the authority to independently employ extensive support enforcement mechanisms such as these. *See, e.g.,* AS 25.27.230 (authorizing CSED to assert a lien upon real or personal property of obligor); AS 25.27.250 (granting CSED power to issue an order to withhold and deliver obligor's real or personal property, including earnings due); AS 25.25.010–.270 (URESA procedures to register support order in foreign jurisdiction).

Of the array of independent powers available to CSED to collect upon delinquent child support "judgments," many are as effective as those available in the courts. We note that, like a motion to reduce arrearages to final judgment under AS 25.27.226, we consider the administrative remedies employed here akin to a standard execution for purposes of AS 09.35.020. Evidence of previous attempts to execute tends to support a finding of "good cause" under AS 09.35.020 and Civil Rule 69(d). However, on remand CSED must further show "good cause" to collect arrearages, if any, which accrued more than five years before any particular administrative effort to collect the accrued debt.

1962), *overruled on other grounds, Scheele v. City* of Anchorage, 385 P.2d 582 (Alaska 1963).

## III. CONCLUSION

The superior courts erred as a matter of law by applying AS 09.10.040 to CSED's motions to collect past-due child support. CSED's motions to establish a final judgment for unpaid child support are proceedings in aid of enforcement of existing domestic judgments. As such, AS 09.10.040 has no application to them. As to the portion of past-due payments that were more than five years old at the time of CSED's motion, execution shall not issue unless the conditions in AS 09.35.020 and Civil Rule 69(d) are satisfied. On remand, CSED must be given the opportunity to show just and sufficient reasons to justify the delay in enforcement, which may include evidence of previous administrative executions. Accordingly, we VACATE the orders of the superior court and REMAND for further proceedings consistent with this opinion.