STATE of Alaska, DEPARTMENT OF REVENUE, CHILD SUPPORT ENFORCEMENT DIVISION ex rel. Constance L. GAUSE, Appellant,

v.

Thomas GAUSE, Appellee.

No. S–7953.

Supreme Court of Alaska.

Nov. 20, 1998.

Diane L. Wendlandt, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Martha C. Shaddy, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

FABE, Justice.

### I. *INTRODUCTION*

In an effort to collect child support arrears owed by Thomas Gause, the Child Support Enforcement Division (CSED) filed a motion under AS 25.27.226 seeking to establish a judgment for the past due payments. The superior court denied the motion, ruling that it was barred by the statute of limitations set out in AS 09.10.040(b), which applies to "actions." In *State ex rel. Inman v. Dean*,[1] we held that AS 25.27.226 motions to collect child support arrears do not qualify as "actions." The legislature's view to the contrary, as expressed in § .040(b), was based on erroneous lower court decisions issued prior to *Dean*. Because statutes based on a

---

1. 902 P.2d 1321, 1323–24 (Alaska 1995).

mistaken premise do not change the legal rules in effect prior to their enactment, we conclude that § .040(b) does not apply to AS 25.27.226 motions. We therefore reverse.

## II. FACTS AND PROCEEDINGS

Thomas Gause and Constance Gause married in 1967 and divorced in 1980. In the divorce decree, the superior court awarded custody of the Gauses' three children to Constance and ordered Thomas to pay $150 per month in support for each child. The court modified this order on two separate occasions to reflect changes in the custody of Gwendolyn, the Gauses' oldest child. In the last modification approved in February 1984, the court ordered Thomas to pay Constance a total of $300 per month in child support for months when Gwendolyn lived with him, and $500 per month in months when Gwendolyn lived with her.

Thomas subsequently moved to South Carolina. After his move, CSED filed a petition in South Carolina under the Uniform Reciprocal Enforcement of Support Act (URESA), then in effect in Alaska.[2] Based on the URESA petition, a South Carolina court issued an order requiring Thomas to pay a total of $175 per month in child support. CSED thereafter changed its accounting to show Thomas as accruing arrears of $175 per month, rather than $300 or $500 per month as required under the Alaska order. The statements sent by CSED to Thomas reflected this change in CSED's accounting practices.

One month after the Gauses' youngest child turned twenty-one, CSED filed a motion under AS 25.27.226[3] asking the superior court to establish a judgment for the child

support arrears owed by Thomas. CSED sought arrears based on the original Alaska support order. Thomas opposed the motion, arguing that it was barred by the statute of limitations set out in AS 09.10.040(b), which provides that an "action" to establish a judgment for child support arrears must be commenced by the date on which the youngest child covered by the support order turns twenty-one.[4] Alternatively, Thomas claimed that the amount of arrears should be reduced because (i) CSED was estopped from claiming arrears under the Alaska order, rather than the South Carolina order; and (ii) CSED should be precluded from collecting support owed on his children's behalf for months when they resided with him.

Superior Court Judge Karen L. Hunt denied CSED's motion without entering findings of fact or conclusions of law. When CSED requested that she clarify her decision, she specified her reliance on Thomas's discussion of the statute of limitations and estoppel issues. CSED appeals, arguing both that its motion was not time barred and that Thomas's arrears should not be reduced based on the claims he raised below.

## III. DISCUSSION

### A. Does the Statute of Limitations Set Out in AS 09.10.040(b) Bar CSED's Motion to Establish a Judgment for Child Support Arrears Owed by Thomas?

■ The parties' dispute over the meaning of AS 09.10.040(b) lies at the center of this appeal.[5] Because the context in which the legislature passed this statute is particularly

---

**2.** See former AS 25.25 (repealed 1995).

**3.** AS 25.27.226 provides:
To collect the payment due, the custodian of a child, or the agency on behalf of that person, shall file with the court (1) a motion requesting establishment of a judgment; (2) an affidavit that states that one or more payments of support are 30 or more days past due and that specifies the amounts past due and the dates they became past due; and (3) notice of the obligor's right to respond. . . .

**4.** AS 09.10.040(b) provides:
An action may be brought to establish a judgment for child support payments that are 30 or

more days past due under a support order, as defined in AS 25.27.900, if the action is commenced by the date on which the youngest child covered by the support order becomes 21 years of age. An action after the establishment of the judgment is governed by (a) of this section.

**5.** Because the meaning of a statute is a question of law, we review de novo the superior court's interpretation of AS 09.10.040(b). See State, Dep't of Revenue v. Gerke, 942 P.2d 423, 425 (Alaska 1997).

relevant to how we interpret it in this case, we begin by discussing the circumstances surrounding its enactment.

In 1993 two superior court judges ruled that former AS 09.10.040 [6] barred CSED from recovering child support arrears that had accrued more than ten years before the date of its AS 25.27.226 motion.[7] In the lower courts, CSED had not argued that the ten-year limit did not apply to its motions to collect arrears; instead, it claimed that the statute of limitations should be tolled based on its timely commencement of administrative enforcement actions.[8] The superior court judges rejected CSED's argument, and it appealed to this court.[9]

Before we decided CSED's appeal, the legislature amended former AS 09.10.040 by adding subsection (b).[10] The new subsection provides that "[a]n action may be brought to establish a judgment for child support payments that are 30 or more days past due under a support order ... if the action is commenced by the date on which the youngest child covered by the support order becomes 21 years of age."[11] As CSED states, the "purpose of the new legislation was to *lengthen* the period of time in which motions to reduce arrears to judgment could be filed." In fact, subsection (b) was created at CSED's request because it feared the loss of its collection authority over a substantial amount of arrears if we affirmed the decisions of the superior court judges.[12]

**6.** Former AS 09.10.040 provided:

No person may bring an action upon a judgment or decree of a court of the United States, or of a state or territory within the United States, and no action may be brought upon a sealed instrument unless commenced within 10 years.

**7.** *See State ex rel. Inman v. Dean,* 902 P.2d 1321, 1322 (Alaska 1995).

**8.** *See id.* at 1323.

**9.** *See id.*

**10.** *See* ch. 86, § 2, SLA 1994.

**11.** AS 09.10.040(b).

**12.** *See* Child Support: Hearing on House Bill 362 Before the House Health, Education and Social Services Standing Comm., 18th Legis.,

After the legislature passed new subsection (b), we decided *State ex rel. Inman v. Dean,* which resolved CSED's appeal of the lower court rulings interpreting former AS 09.10.040. Because the CSED motions at issue in *Dean* had been filed prior to the effective date of subsection (b), our decision interpreted the statute's former version.[13] As we explained, former AS 09.10.040 became part of Alaska's statutory law in the late 1800s and stemmed from the Oregon code.[14] Thus, our opinion relied on common law interpretations of the terms used in the statute.

We began our statutory analysis in *Dean* by stating that a judicially decreed child support payment is a judgment that vests when the installment becomes due but remains unpaid.[15] Therefore, we explained, although AS 25.27.226 describes motions to collect arrears as "establish[ing] a judgment," such motions are actually proceedings to enforce an *already existing* judgment.[16] We then held that enforcing a judgment does not qualify as "bring[ing] an action" within the meaning of former AS 09.10.040 because an "action" under common law is a proceeding commenced by the filing of a complaint.[17] We thus concluded that the former statute did not apply to CSED's motions under AS 25.27.226 to collect arrears.[18] Instead, we ruled that such motions were governed by AS 09.35.020, which applies to executions of judgments.[19] Under this statute, a judgment

2nd Sess. (Alaska 1994) (statement of Mary Gay, Director of CSED).

**13.** *See Dean,* 902 P.2d at 1322 n. 1.

**14.** *See id.* at 1324 n. 9.

**15.** *See id.* at 1323 (citing AS 25.27.225).

**16.** *Id.* at 1324 (emphasis added).

**17.** *Id.* at 1323–24.

**18.** *See id.* We suggested, however, that former AS 09.10.040 would apply to CSED's attempts to collect child support arrears based on foreign support orders because enforcing such judgments under the common law required commencing a new action. *See id.* at 1323.

**19.** *See id.* at 1324.

creditor who attempts to execute a judgment after a lapse of five years must show good cause for the delay; however, the statute places no absolute time limit on enforcement proceedings.[20]

### 1. The parties' arguments

CSED argues that *Dean*'s construction of the term "action" in former AS 09.10.040 must govern our interpretation of new subsection (b) because the subsection also refers to bringing an action.[21] Thus, it argues, because a motion to collect arrears is *not* an action, subsection (b) does not apply to the AS 25.27.226 motion filed in this case.

Thomas replies that our construction of the word "action" in *Dean* is irrelevant to interpretation of AS 09.10.040(b) because *Dean*'s holding was based on the former version of the statute, which did not include subsection (b).[22] He further claims that the legislature passed subsection (b) at CSED's request to apply to AS 25.27.226 motions. Thus, he concludes that it would contradict legislative intent to construe the new subsection as *not* applying to the motion to collect arrears filed in this case.

### 2. Construing AS 09.10.040(b)

Each of the parties' arguments about the scope of subsection (b) has merit. As CSED claims, a motion to establish a judgment for child support arrears under AS 25.27.226 is not an "action" as that term was understood at common law. But Thomas is correct that the legislature drafted AS 09.10.040(b) with the understanding that it would apply to such motions.[23]

The crucial point, however, is that the legislature added new subsection (b) because of the lower courts' erroneous conclusion that former AS 09.10.040 applied to CSED's motions to collect arrears. We have previously considered how to analyze a statute when the legislature acts based on a mistaken premise.

In *City of Fairbanks v. Schaible*,[24] we were asked to decide whether the City could be held liable for injuries resulting from the negligence of its fire department.[25] The City urged us to find that it was immune from tort liability; as evidence, it pointed to a statute enacted in 1957 that assumed that fire-fighting organizations enjoyed such immunity.[26] We recognized that the legislature's understanding of immunity law

**20.** AS 09.35.020 provides:

When a period of five years has elapsed after the entry of judgment and without an execution being issued on the judgment, no execution may issue except by order of the court in which judgment is entered. The court shall grant the motion if the court determines that there are just and sufficient reasons for the failure to obtain the writ of execution within five years after the entry of judgment.

**21.** *See* AS 09.10.040(b).

**22.** *See* former AS 09.10.040 (amended 1994).

**23.** *See, e.g.*, Child Support: Hearing on House Bill 362 Before the Senate Judiciary Comm., 18th Legis. 2nd Sess. (April 25, 1994) (testimony of Philip Petrie, Chief Operations Officer of CSED). Mr. Petrie stated:

[T]his bill has two purposes. The first part of it is a change to the statute of limitations.... About five years ago due to our—a limitation on AG resources, a decision was made at the Division not to send Child Support cases to court to establish judgments, which would allow us to enforce against them. It was thought at that time, and it lasted for several years, that our enforcement—administrative enforcement actions actually tolled the statute.

Then last summer, we had two court cases come down in Anchorage where the judge said administrative enforcement actions did not toll the statute of limitations, which put us in a catch-22 situation where we have a substantial number of cases, 8,785 cases representing $43 million that without this change will effectively evaporate off of the books.

We have—we are appealing both of those cases [to] the Supreme Court now; but that's a lengthy process. And we looked at other state statute of limitations and realized that we needed to extend ours to a more reasonable period of time so that we aren't going back into court to officially establish a judgment. And the case now, we would have to do that approximately twice in the lifetime of a normal child, assuming 18 [years]. Because there's a ten year statute of limitation. So that's the purpose of the first part of it.

*See* Transcript of Senate Judiciary Committee Meeting, April 25, 1994.

**24.** 375 P.2d 201 (Alaska 1962), *overruled on other grounds by Scheele v. City of Anchorage*, 385 P.2d 582 (Alaska 1963).

**25.** *See id.* at 206.

**26.** *See id.* at 209.

stemmed from decisions of the territorial district court in Alaska, which had held that cities were not liable in tort for their exercise of governmental functions.[27] We concluded, however, that the territorial court had misinterpreted the law of our state and that municipalities in Alaska did not enjoy immunity from tort liability.[28] We also implicitly held that the 1957 statute did not change the law and emphasized that it was based on an "erroneous belief." [29]

■ The circumstances in *Schaible*, although different from those in this case, are sufficiently analogous to provide guidance in resolving the issue before us. The legislature that passed the AS 09.10.040(b) amendment, like the legislature that passed the 1957 statute in *Schaible*, was relying on an erroneous construction of the law by a lower court. A statute passed based on a mistaken premise does not change the legal rule in effect before its passage.[30] Although the 1957 statute in *Schaible* was not an *amendment* to the preexisting statute, that case presented us with an opportunity to broaden the scope of municipal immunity beyond that in the preexisting statute based on the legislature's implied recognition of such immunity in the later statute. Instead, we declined to change the judicially recognized meaning of immunity to conform to the legislature's mistaken view of the law.[31]

In this case, the legislature's decision to amend AS 09.10.040(b) does not relieve us of the duty of interpreting the term "action" in that provision. Understandably, the legislature relied on erroneous trial court decisions in its assumption that motions to reduce arrears to judgment constitute "actions." But in *Dean* we held that they do not. As in *Schaible*, we decline to broaden the judicially recognized scope of the word "action" to conform to the legislature's "erroneous belief" about the law.

■ Thus, we hold that new subsection (b) does not apply to AS 25.27.226 motions to collect arrears because such motions are not "actions" as that term is understood in the common law. The superior court therefore erred in concluding that new subsection (b) barred CSED's AS 25.27.226 motion in this case.[32]

## B. *Other Issues*

CSED also discusses the other claims raised below by Thomas regarding the amount of arrears owed. It argues (i) that it should not be estopped from seeking arrears under the Alaska order based on accounting statements sent to Thomas; (ii) that the URESA order did not modify the Alaska support order; and (iii) that, because he failed to file a motion to modify the custody and support order, Thomas's support obligation was not suspended during periods when he had physical custody of the children.

The superior court's clarification order suggests that it considered only the statute of limitations and estoppel issues in reaching its decision. We therefore limit our discussion of the other claims raised by CSED to the estoppel issue. On remand, the superior court should address the merits of CSED's two remaining arguments.[33]

27. *See id.*

28. *See id.*

29. *See id.*

30. *See id.*

31. *See id.*

32. AS 09.10.040(b), like former section .040, will apply only to CSED's attempts to collect child support arrears based on foreign support orders because enforcing such judgments under the common law requires commencing a new action. *See Dean*, 902 P.2d at 1325.

33. We would like to provide guidance to the superior court, however, in evaluating these remaining arguments. In deciding whether the URESA order modified the previous Alaska support order, the superior court should find helpful our recent decision in *State, Department of Revenue v. Valdez*, 941 P.2d 144, 154 n. 14 (Alaska 1997).

With respect to its argument concerning Thomas's support obligation during periods when he had physical custody of the children, CSED now concedes that Thomas's arrears should be decreased to reflect months in which Gwendolyn lived with him. Recognizing that the order at issue in this case assumed a shifting support obligation based on Gwendolyn's residence, CSED agrees that Constance is precluded from seeking support for months in which Gwendolyn lived with Thomas. *See Karpuleon v. Kar-*

We analyze the estoppel argument by relying on the rule established in our recent decision in *State, Department of Revenue v. Valdez.*[34] In *Valdez*, we stated that when CSED is collecting child support on behalf of the custodial parent, its actions cannot amount to waiver or estoppel because it has no power to waive a child's right to support.[35] In contrast, we suggested that the doctrines of waiver and estoppel could apply when CSED is seeking reimbursement for AFDC payments, because only the State's rights would be at stake in such situations.[36]

■ Recognizing the applicability of our ruling in *Valdez* to the facts of this case, Thomas now concedes that CSED's actions in sending him erroneous accounting statements cannot justify his refusal to pay arrears owed to his ex-wife. He argues, however, that CSED is not entitled to the $600 that he owes the State for AFDC reimbursement. Although CSED theoretically could be estopped from recovering such funds under the rationale of *Valdez*,[37] Thomas's estoppel claim with respect to these funds fails because he cannot show detrimental reliance.[38] As CSED points out, Thomas's debt for the AFDC payments accrued in 1980 and 1981, before the URESA order was issued and before CSED began sending him accounting statements showing his arrears as accruing under that order. Therefore, because Thomas could not have reasonably relied on the accounting statements in concluding that he did not owe the $600 in AFDC payments, CSED may recover these funds.

## IV. CONCLUSION

The superior court erred in concluding that the statute of limitations set out in AS 09.10.040(b) barred CSED's AS 25.27.226 mo-

tion to collect child support arrears owed by Thomas. Subsection (b) applies only to "actions" establishing a judgment, and AS 25.27.226 motions do not qualify as "actions." The legislature's view to the contrary was based on the erroneous conclusion of the lower courts. Because statutes based on a mistaken premise do not change the legal rules in effect prior to their enactment, we conclude that subsection (b) does not apply to AS 25.27.226 motions because they are not "actions." We therefore REVERSE the decision of the superior court and REMAND for proceedings consistent with this opinion.

COMPTON, J., dissenting in part.

COMPTON, Justice, dissenting in part.

I do not agree with Section III.A.2. It is based on *City of Fairbanks v. Schaible*, 375 P.2d 201 (Alaska 1962), which is distinguishable in a significant and material way from this case. I do not believe *Schaible* is either controlling or persuasive.

In *Schaible* we held that "[s]ection 56–2–2 A.C.L.A.1949 in plain language imposes liability 'for an injury to the rights of the plaintiff arising from some act or omission' of the City." *Id.* at 208. Noting that the City "relies heavily on [*Gilbertson v. City of Fairbanks*, 262 F.2d 734, 739 (9th Cir.1959)]," where the Court of Appeals for the Ninth Circuit ... held that the mantle of municipal immunity covers a firefighting activity of the City of Fairbanks," *id.* at 209, we observed that § 56–2–2

was totally ignored in the Gilbertson opinion. Whether it was considered in reaching that decision, we do not know. Assuming it had not been considered, we cannot speculate as to whether a different result

*puleon,* 881 P.2d 318, 321–22 (Alaska 1994). But CSED claims that Thomas's arrears should not be credited for months when his youngest child Vanessa resided with him because it was his duty to seek a modification of the custody and support order when circumstances changed. *See id.* at 320. In addressing this claim, the superior court may wish to decide whether a credit would be appropriate under AS 25.27.020(b), which provides that an obligor can receive an offset against child support owed for payments made directly to the obligee or to the obligee's custodian.

**34.** 941 P.2d 144 (Alaska 1997).

**35.** *See id.* at 154 n. 14.

**36.** *See id.*

**37.** *See id.* at 154 n. 14.

**38.** *See id.* at 152 n. 9 (setting out the requirements of estoppel claims).

would have been reached if the history and meaning of that statute had been examined. In any event, it would make no difference here. The Supreme Court of the State of Alaska is not bound by the Ninth [C]ircuit decision in Gilbertson.

*Id.* (footnotes omitted).

We then addressed the City's following argument:

Finally, the City contends that a 1957 statute of the Alaska legislature *impliedly* recognized municipal immunity in this area.[38] It may be true that the person who drafted this act and the legislature that enacted it believed that such immunity existed. This is understandable in light of the then prevailing view of the Territorial district court that a city was not liable in tort in the exercise of a governmental function. But we hold that this is not the law in Alaska. Thus, the *most* that can be said for the 1957 statute is that it represents an erroneous belief that cities are not liable in tort for negligence connected with firefighting activities.

[38]. S.L.A.1957, ch. 92 [Sec. 40–14–1 A.C.L.A.Cum.Supp.1957] provides that fire-fighting organizations of Alaska, when engaged outside their home districts, "shall have the same immunities and privileges as if performing the same [functions] within their respective cities, towns, incorporated area or territory." The City's argument as to the meaning of this language finds support in Gilbertson....

*Id.* at 209–10 (footnotes and citations omitted, except as noted; emphasis added).

Section 40–14–1 did not purport to amend § 56–2–2. The City argued that § 40–14–1's enactment was an *implied* recognition of municipal immunity. It is not clear from the opinion whether the City was arguing that § 40–14–1 impliedly created municipal immunity or that it was implied evidence of the meaning of § 56–2–2. Regardless, neither interpretation is material in this case.

It is not correct to say, as does the court, that "[t]he legislature that passed the AS 09.10.040(b) amendment, like the legislature that passed the 1957 statute in *Schaible,* was relying on an erroneous construction of the law by a lower court." Op. at 603. I assume that the court is referring to § 40–14–1, the 1957 statute, as "the statute in *Schaible,*" and

referring to § 56–2–2, the 1949 municipal-liability statute, as "the law" that a lower court had "erroneous[ly] constru[ed]." But *Schaible* never determined that the 1957 legislature did, in fact, pass § 40–14–1 in reliance on any construction of § 56–2–2 by a lower court. We said "it may be true" that the drafter of § 40–14–1 and the legislature that passed it were relying on an erroneous view of the law; we did not say that it was true. Moreover, the City's argument was that § 40–14–1, the later statute, had *impliedly* recognized municipal immunity from tort liability for negligent firefighting; contrary to the City's view, however, we held that such liability was imposed "in plain language" by § 56–2–2. We did not determine that the later statute had in fact established or recognized municipal immunity. And we did not determine that the 1957 legislature had intended to establish or recognize municipal immunity, only that the "1957 statute ... represents an erroneous belief that cities are not liable in tort for negligence connected with fire-fighting activities." *Id.* at 209. Had that been the legislative intent, the analogy might be persuasive.

In sum, my disagreement focuses on the court's equation of AS 09.10.040(b) with § 40–14–1, which the court says was "the statute in *Schaible.*" It was not. The "statute in *Schaible*" was § 56–2–2, which governed the case and made the City liable "in plain language." The City unsuccessfully tried to put § 40–14–1 "at issue" by pointing to it as *evidence* that a later legislature had *thought* that municipalities were immune from such liability. In this case, AS 09.10.040(b), the statute at issue, is not evidence of how to interpret some other statute that in fact governs the case; it *is* the statute that governs the case.

In the case before us, there is no question what the legislature intended. The fact that its intention was motivated by trial courts having interpreted a statute in a way the legislature—or, in this case, the executive branch—found unwise or unworkable is no reason to ignore what the legislature intended. That is not our prerogative. We cannot suppose that, had the legislature known we would disagree with the trial courts' interpre-

tations of AS 09.10.040(b), it would have enacted a different statute. Yet that is the import of the court's opinion.

The best that can be said for *Schaible* is that the legislature acquiesced in a federal appellate court's interpretation of Alaska law, an interpretation that the Alaska Supreme Court ultimately found wanting. In the case at bar, the legislature emphatically disagreed with trial courts' interpretations of a law, and enacted a law that it wanted to govern the rights and responsibilities of parties in a given situation. It did not acquiesce in judicial determinations; it rejected those determinations and declared what it wanted the law to be. This is not a distinction without a difference.

Since it is clear to me, and by its own admission to the court as well, that the legislature amended the statute intending the result the State asks us to enforce, we must do so.