Peter and Baerbel **GUTTCHEN,**
Appellants,

v.

Gregory and Edithanne **GABRIEL,**
Appellees.

No. S–9648.

Supreme Court of Alaska.

June 14, 2002.

Steve Gray, Steven P. Gray, P.C., Kodiak, for Appellants.

Michael D. White and Michael A. Grisham, Patton Boggs, LLP, Anchorage, for Appellees.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Peter and Baerbel Guttchen sought leave under AS 09.35.020 to execute on a judgment lien more than five years after entry of the judgment; the lien pertained to a parcel of land that the judgment awarded to Gregory and Edithanne Gabriel and secured the judgment's award of costs and attorney's fees in favor of the Guttchens. The superior court denied the Guttchens' motion for execution, ruling that the Gabriels' intervening bankruptcy had rendered the lien invalid, since, in the court's words, "[o]nce the valid underlying judgment is discharged in bankruptcy, it cuts the legs out from under the lien." We reverse and remand with directions to grant the Guttchens' motion, holding that the superior court erred in dismembering the Guttchens' lien and that undisputed evidence satis-

fies AS 09.35.020's demand for a "just and sufficient reason" to allow execution.[1]

## II. FACTS AND PROCEEDINGS

This case began as a dispute between three parties—Baerbel and Peter Guttchen, Edithanne and Gregory Gabriel, and Joseph Brodman—over the ownership of a small, remote parcel of land on Raspberry Island, near Kodiak. The litigation that ensued eventually led to two unpublished decisions from this court.[2] In the first, we summarized the background facts as follows:

> Joseph Brodman owned 4.8 acres of land on Raspberry Island. He agreed to give 1.5 acres of the parcel to Gregory Gabriel, in exchange for electrical supplies Gabriel had given him. Brodman executed a quit-claim deed, intended as security only, in favor of [the] Gabriels, conveying to them an undivided one-half interest in the 4.8 acre parcel. Prior to delivering the quit-claim to the Gabriels, Brodman executed a lease to the Guttchens which, on its face, conveyed the entire 4.8 acres. Brodman and the Guttchens also executed, but did not record, a separate agreement acknowledging that the Gabriels had been given the 1.5 acres. Mr. Gabriel discovered the recorded Guttchen lease. Difficulties among the three parties ensued, culminating in this lawsuit.
>
> The jury trial resulted in verdicts for Brodman against the Gabriels, the Guttchens against the Gabriels, and the Guttchens against Brodman. The jury awarded Brodman and the Guttchens considerable punitive damages from the Gabriels. The court quieted title[ ] in Brodman, subject to the Gabriels' "right of possession" of the 1.5 acres.... [3]

Our first decision vacated the award of punitive damages, amended the judgment to grant the Gabriels a fee interest in 1.5 acres, and directed the parties to "have the property surveyed and to establish boundaries for the two parcels"; we recognized, however, that the Kodiak Island Borough might refuse to allow the property to be subdivided.[4] We also vacated the original award of prevailing-party attorney's fees, leaving it to the trial court to reconsider the issue on remand.[5]

On remand, the superior court modified the judgment as directed and, by a judgment entered July 5, 1989, awarded the Guttchens $7,526.02 in attorney's fees and costs against the Gabriels. The judgment specifically directed the Gabriels and Brodman to survey the parcel and establish boundaries within sixty days. The Guttchens recorded the judgment in the Kodiak Recording District office on July 17, 1989, perfecting their lien on the Gabriels' 1.5 acre parcel.

The Gabriels appealed the superior court's award of attorney's fees. While the appeal was still pending, they filed for personal bankruptcy; the bankruptcy action stayed their appeal. The United States Bankruptcy Court for the District of Alaska discharged the Gabriels' debts on September 24, 1990. Thereafter, appellate proceedings resumed, and, on July 17, 1991, we issued the second unpublished decision in the case, affirming the attorney's fees awarded on remand.[6]

The Guttchens took no immediate action to execute their judgment lien after we affirmed their attorney's fee award. Similarly, the Gabriels took no immediate steps to survey the Brodman property in order to establish the boundaries of their 1.5 acre parcel.

On May 10, 1994, the Gabriels quitclaimed their property interest to their children, Gregory Gabriel Jr. and Brian Gabriel. The Guttchens—who had previously acquired Brodman's interest—offered to buy the children's interest; their offer was rejected. In 1999 Gregory Jr. requested the Kodiak Island Borough to grant a variance that would

1. The Guttchens have additionally challenged the superior court's award of prevailing-party attorney's fees. Our decision reversing the superior court's judgment on the merits moots this issue.

2. See *Gabriel v. Guttchen*, Mem. Op. & J. No. 434 (Alaska, January 25, 1989) (*Gabriel I*); *Gabriel v. Brodman*, Mem. Op. & J. No. 561 (Alaska, July 17, 1991) (*Gabriel II*).

3. *Gabriel I*, Mem. Op. & J. No. 434 at 2.

4. *Id.* at 3–4.

5. *Id.* at 4.

6. See *Gabriel II*, Mem. Op. & J. No. 561 at 2–3.

enable him to subdivide the Brodman property; the borough denied the request on June 17, 1999, and Gregory Jr. appealed to the superior court. On August 3, 1999, after learning of Gregory Jr.'s efforts to obtain the variance, the Guttchens filed their motion for leave to execute after five years. Following oral argument, the superior court denied the motion, ruling that under common law the Guttchens' judgment lien did not survive the bankruptcy court's discharge of the Gabriels' underlying debt.

The Guttchens appeal.

## III. ANALYSIS

### A. The Parties' Arguments

The Guttchens argue that the superior court erroneously concluded that the Gabriels' bankruptcy discharge extinguished their judgment lien. While acknowledging that the superior court never considered whether they had established good cause to execute, the Guttchens urge us to direct the superior court to grant their motion for leave to execute because, they contend, the undisputed record establishes good cause for leave to execute as a matter of law. In response, the Gabriels tacitly concede that the superior court applied the wrong legal standard with respect to the judgment lien's survival, but nevertheless urge us to affirm because, in the Gabriels' view, the Guttchens failed as a matter of law to show good cause for leave to execute late.

### B. Standard of Review

 Whether the superior court applied an incorrect legal standard is a question of law that we review using our independent judgment.[7] We may apply a legal doctrine

to undisputed facts without giving deference to the superior court.[8]

### C. The Superior Court Applied the Wrong Standard in Its Decision.

The superior court ruled from the bench at oral argument that, under common law doctrine, the discharge of the underlying debt in the Gabriels' bankruptcy effectively nullified the Guttchens' judgment lien:

> I have substantial doubt that the judgment and lien can have a separate existence. The case law that I'm familiar with from the common law is to the effect that in order for the judgment lien to exist, there has to be a valid underlying judgment.
>
> Once the valid underlying judgment is discharged in bankruptcy, it cuts the legs out from under the lien. The lien cannot have a separate existence. And I am prepared to hold to that effect at this time, but I will give counsel a chance to argue the point.

Accordingly, the court denied the Guttchens' motion to execute without further considering its merits. But the superior court erred concerning the effect of the bankruptcy discharge.

 The United States Supreme Court has held that a bankruptcy discharge does not extinguish a valid lien on real property.[9] "[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."[10] While the Supreme Court's holding involved a mortgage lien,[11] numerous other courts have held that judgment liens similarly survive bankruptcy and are enforceable *in rem*.[12] The *In*

---

7. *Lowe v. Lowe*, 817 P.2d 453, 456–57 (Alaska 1991).

8. *Foss Alaska Line, Inc. v. Northland Servs., Inc.*, 724 P.2d 523, 526 (Alaska 1986).

9. *Johnson v. Home State Bank*, 501 U.S. 78, 82–84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

10. *Id.* at 84, 111 S.Ct. 2150.

11. *Id.* at 80–81, 111 S.Ct. 2150.

12. *See, e.g., In re Hermansen*, 84 B.R. 729, 733 (Bankr.D.Colo.1988); *Songer v. Cooney*, 214 Cal. App.3d 387, 264 Cal.Rptr. 1, 2–4 (1989) (noting that judgment is enforceable absent bankruptcy court order avoiding lien in its entirety); *First Nat'l Bank in Toledo v. Adkins*, 272 Ill.App.3d 111, 208 Ill.Dec. 820, 650 N.E.2d 277, 279–80 (1995) (allowing judgment lien to be revived pursuant to statute after statute of limitations had run despite intervening bankruptcy discharge of personal liability on judgment lien); *Pimentel v. White*, 79 Or.App. 620, 720 P.2d 758, 760 (1986);

*re Hermansen* court held, for example, that "[g]enerally, valid, perfected judicial liens which precede bankruptcy survive and are enforceable after bankruptcy. . . . The bankruptcy discharge does not prevent post-petition enforcement of valid liens. The secured creditor may proceed to enforce the lien, as an *in rem* action, and is not barred. . . ." [13]

Accordingly, it was error to deny the Guttchens' motion for leave to execute on the ground that the Gabriels' bankruptcy extinguished both the underlying debt and the lien.

### D. The Record Establishes Fair and Just Reasons to Allow Execution.

Because it relied on the assumption that the Guttchens' lien could not survive without its underlying debt, the superior court did not address the merits of their motion for leave to execute late. Alaska Statutes 09.35.020 establishes the standard:

> When a period of five years has elapsed after the entry of judgment and without an execution being issued on the judgment, no execution may issue except by order of the court in which judgment is entered. The court shall grant the motion if the court determines that there are just and suffi-

cient reasons for the failure to obtain the writ of execution within five years after the entry of judgment. [14]

In *State, Department of Revenue, Child Support Enforcement Division, ex rel. Inman v. Dean,* we construed this statute to require a showing of "good cause" for delay in execution. [15] Although we noted in *Dean* that "administrative efforts to collect delinquent support payments" might show good cause, as might "[e]vidence of previous attempts to execute," [16] we have not otherwise defined what would suffice to meet the statutory requirement of "just and sufficient reasons for the failure to obtain the writ of execution within five years." [17]

■ Here, both parties urge us to sustain their respective positions on the issue of "just and sufficient reasons" as a matter of law. Although the issue typically involves a factual component and is therefore usually consigned to the superior court's discretion, [18] both parties in this case had the opportunity to present their positions to the superior court in their memoranda and affidavits, neither party requested an evidentiary hearing before the superior court, and the critical facts surrounding the issue are undisputed. Given

*Hayden v. American Honda Motor Co.,* 835 S.W.2d 656, 660 (Tex.App.1992).

**13.** 84 B.R. at 733 (citation omitted).

**14.** Alaska Civil Rule 69(d) implements this statute by setting forth procedures for executing more than five years after judgment:

> (d) Execution After Five Years. Whenever a period of five years shall elapse without an execution being issued on a judgment, no execution shall issue except on order of the court in the following manner:
> (1) The judgment creditor shall file a motion supported by affidavit with the court where the judgment is entered for leave to issue an execution. The motion and affidavit shall state the names of the parties to the judgment, the date of its entry, the reasons for failure to obtain a writ for a period of five years and the amount claimed to be due thereon or the particular property of which possession was adjudged to the judgment creditor remaining undelivered.
> (2) Upon filing such motion and affidavit the judgment creditor shall cause a summons to be served on the judgment debtor. . . .

> (3) The judgment debtor . . . may file and serve a verified answer to such motion . . . alleging any defense to such motion which may exist. . . .
> (4) The order shall specify the amount for which execution is to issue. . . .
> (5) At the time of filing the motion for leave to issue execution or at any time thereafter before the final order is entered, the judgment creditor may cause the property of the judgment debtor to be attached and held during the time said motion is pending and until the final order is entered. . . . In the event that the court shall order that execution be issued, it shall further order that any property of the judgment debtor attached hereunder shall be sold for the satisfaction of such execution. . . .

**15.** 902 P.2d 1321, 1324 (Alaska 1995).

**16.** *Id.* at 1325.

**17.** AS 09.35.020.

**18.** *See State, Dep't of Revenue v. Dean,* 902 P.2d at 1325–26 (child support); *see also Perry v. Newkirk,* 871 P.2d 1150, 1156 (Alaska 1994) (same); *Jones v. Cent. Peninsula Gen. Hosp.,* 779

these circumstances, we find no impediment to deciding the issue of just and sufficient reasons for late execution as a matter of law.[19]

The undisputed facts in the record show the following: (1) the 1989 attorney's fees award and recorded judgment established a lien against any interest the Gabriels held in the Raspberry Island property; (2) the Guttchens perfected their lien before the Gabriels filed for bankruptcy in March 1990; (3) the bankruptcy discharged the Gabriels' personal liability so that the only method of enforcing the judgment was the judicial lien on the Raspberry Island property; (4) the Gabriels' property interest in the Raspberry Island parcel could only be perfected by surveying the property, establishing its boundaries, and obtaining a variance from the Kodiak Island Borough to allow subdivision;[20] (5) despite a provision in the superior court's July 5, 1989, judgment requiring the Gabriels to survey and establish their boundaries within sixty days, neither the Gabriels nor their successors—their children—applied for a variance until 1999; (6) in response, the Guttchens filed a motion for leave to execute on their lien.[21]

We find that these circumstances establish good cause for late execution as a matter of law: the Raspberry Island property was the only property of the Gabriels subject to execution, the Gabriels controlled the process of subdividing the property, and they did not timely act upon the superior court's order to apply for a variance in order to subdivide. When Greg Gabriel Jr. applied for a variance in 1999, the Guttchens promptly filed their motion for leave to execute. Because the Gabriels controlled the subdivision process, discharged the underlying debt in bankruptcy, and failed to act to perfect their own interest in the 1.5 acre parcel for ten years, the Guttchens had compelling reason to delay execution until Gregory Jr. ultimately attempted to subdivide the property.

Moreover, the Gabriels failed to produce any evidence below suggesting that a delayed execution might actually prejudice them: their personal debt had long been discharged, they had quitclaimed the parcel to their children in 1994, they no longer claimed any personal interest in it, and they offered no factual basis to establish standing to assert any potential prejudice to their successors in interest.[22]

On this record, then, we hold as a matter of law that denial of the Guttchens' motion for leave to execute would be an abuse of discretion.

## IV. CONCLUSION

We VACATE the superior court's judgment and REMAND with directions to enter a judgment granting the motion for leave to execute late.

---

P.2d 783, 789 (Alaska 1989) (motion for summary judgment).

19. *Foss Alaska Line, Inc. v. Northland Servs., Inc.*, 724 P.2d 523, 526 (Alaska 1986) (stating that we may apply a legal doctrine to undisputed facts without deferring to the trial court). In *Dean*, we did find it necessary to remand for the superior court to determine the existence of a fair and just reason. 902 P.2d at 1325–26. But unlike the parties in the present case, the parties there had not had an opportunity to litigate the issue before the superior court. Accordingly, *Dean* does not support the proposition that a remand is necessary here.

20. Following this court's first decision, the Kodiak Island Borough notified the Gabriels that they needed to file a subdivision plat to subdivide, that the Raspberry Island property was in a conservation district where the minimum lot size was five acres, and that they therefore would need a variance.

21. It is also undisputed and relevant to the issue of good cause that the Guttchens had attempted to execute against several bank accounts without success prior to the bankruptcy stay. *See Dean*, 902 P.2d at 1325 (noting the "[e]vidence of previous attempts to execute" might show good cause for subsequent delay).

22. In their brief, the Gabriels suggest prejudice to Gregory Jr. by portraying him as "an innocent third party." But the record hardly supports the description: Gregory Jr. was on notice of the Guttchens' lien when the Gabriels conveyed the property in 1994, and their quitclaim deed could convey no greater interest to Gregory Jr. than the Gabriels themselves possessed.